**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Matthew Havrilla, Cynthia Dawson, Alden Henriksen, Melody Deschepper, Christopher Tilton, and Mark Hackett, individually and on behalf of all others similarly situated, ) ) ) ) ) | |
| Plaintiffs, ) | Case No. 1:22-cv-04126 |
| ) | |
| v. ) | Judge Nancy L. Maldonado |
| ) | |
| Centene Corporation, ) | Oral Argument Requested |
| Centene Management Company LLC, and ) | |
| Celtic Insurance Company, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**
**PLAINTIFFS' CLASS ACTION COMPLAINT**

**Table of Contents**

Introduction ...................................................................................................................................1

Facts…... ........................................................................................................................................2

Legal Standard ..............................................................................................................................5

Reasons for Dismissal ...................................................................................................................6

I.      Plaintiffs Fail To State a Civil RICO Claim. ......................................................................6

       A.     Plaintiffs' Alleged "Enterprise" Fails the Distinctiveness Test. .............................6

       B.     Plaintiffs' Mail and Wire Fraud Allegations Do Not Satisfy Rule 9(b). ..............10

       C.     Plaintiffs' Complaint Sounds in Breach of Contract and Fails To
             Adequately Allege Intent To Defraud. ...................................................................13

       D.     Plaintiffs' Allegations that Defendants Violated ACA Requirements
             Cannot Give Rise to a RICO Claim. ......................................................................16

II.     Plaintiffs Fail To State a Claim for Unjust Enrichment. ...................................................17

       A.     Unjust Enrichment Does Not Lie Where a Contract Exists. ..................................17

       B.     Plaintiffs' Unjust Enrichment Claim Fails Because Plaintiffs Have an
             Adequate Remedy at Law. .....................................................................................18

       C.     Plaintiffs' Unjust Enrichment Claim Must Be Dismissed Because It Is
             Based on a Deficient RICO Claim. ........................................................................19

III.    Plaintiffs Lack Standing To Raise Claims Based on the Laws of States Where No
       Named Plaintiff Resides or Suffered an Injury. ................................................................19

IV.    Plaintiffs Fail To State a Claim Under State Consumer Protection Laws. ........................22

       A.     Like Their Federal Claims, Plaintiffs' State-Law Fraud Allegations Do
             Not Satisfy Rule 9(b). ...........................................................................................22

       B.     Plaintiffs Do Not State a Claim Under the Kentucky, Nebraska, Illinois,
             New Jersey, New Mexico, North Carolina, and Pennsylvania Consumer
             Protection or Consumer Fraud Statutes. ...............................................................23

Conclusion ...................................................................................................................................25

## Table of Authorities

### Cases

*Air Evac EMS, Inc. v. USAble Mut. Ins. Co.*, 931 F.3d 647 (8th Cir. 2019) ...............................17

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) ...........................................................20

*Arnold v. Microsoft Corp.*, 2000 WL 36114007 (Ky. Cir. Ct. July 21, 2000), *aff'd* 2001
     WL 1835377 (Ky. Ct. App. Nov. 21, 2001) ...................................................................23

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................5

*Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753 (9th Cir. 2015)............................................19

*Avery v. State Farm Mut. Auto Ins. Co.*, 835 N.E.2d 801 (Ill. 2005) .........................................24

*Ayres v. Gen. Motors Corp.*, 234 F.3d 514 (11th Cir. 2000) .......................................................16

*Bachman v. Bear, Stearns & Co.*, 178 F.3d 930 (7th Cir. 1999)...................................................7

*Baker v. IBP, Inc.*, 357 F.3d 685 (7th Cir. 2004)..........................................................................6

*Baldwin v. Star Scientific, Inc.*, 78 F. Supp. 3d 724 (N.D. Ill. 2015) .........................................20

*Bankcard Am., Inc. v. Elliott*, 1994 WL 494843 (N.D. Ill. Sept. 8, 1994) .................................16

*Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502 (7th Cir. 2007) ......................................22

*Bower v. Jones*, 978 F.2d 1004 (7th Cir. 1992) .....................................................................13, 16

*Brooks v. Valley Nat. Bank*, 548 P.2d 1166 (Ariz. 1976) (en banc) ...........................................18

*Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331 (4th Cir. 1998) .........................25

*Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687 (7th Cir. 2012) .................................4

*Bucklew v. Hawkins, Ash, Baptie & Co., LLP*, 329 F.3d 923 (7th Cir. 2003)...............................7

*Carr v. Tillery*, 591 F.3d 909 (7th Cir. 2010) .............................................................................16

*Carl Kelley Constr. LLC v. Danco Techs.*, 656 F. Supp. 2d 1323 (D.N.M. 2009).......................25

*Cleary v. Philip Morris Inc.*, 656 F.3d 511 (7th Cir. 2011)........................................................19

*Coda v. Constellation Energy Power Choice, LLC*, 409 F. Supp. 3d 296 (D.N.J. 2019).............25

*Codell Const. Co. v. Commonwealth*, 566 S.W.2d 161 (Ky. Ct. App. 1977)...............................18

*Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752 (1984) ....................................................8

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006) .................................................................20

*Danielsen v. Burnside-Ott Aviation Training Ctr., Inc.*, 941 F.2d 1220 (D.C. Cir. 1991) ...........17

*Del. Motel Assocs., Inc. v. Cap. Crossing Servicing Co.*, 2017 WL 4224618 (N.D. Ill. Sept. 22, 2017) ...........................................................................................................................11

*Diamond "S" Dev. Corp. v. Mercantile Bank*, 989 So. 2d 696 (Fla. Dist. Ct. App. 2008) (per curiam) ...................................................................................................................................18

*Duffy v. Charles Schwab & Co.*, 123 F. Supp. 2d 802 (D.N.J. 2000) ..........................................18

*Durell v. Sharp Healthcare*, 108 Cal. Rptr. 3d 682 (Ct. App. 2010) ..........................................18

*Easter v. Am. W. Fin.*, 381 F.3d 948 (9th Cir. 2004) ..................................................................21

*Fitzgerald v. Chrysler Corp.*, 116 F.3d 225 (7th Cir. 1997) ..........................................................7

*Gavin v. AT&T Corp.*, 543 F. Supp. 2d 885 (N.D. Ill. 2008) .......................................................10

*Goren, v. New Vision Int'l, Inc.*, 156 F.3d 721 (7th Cir. 1998) ...................................................11

*Hage v. Gen. Servs. Bureau*, 306 F. Supp. 2d 883 (D. Neb. 2003) .............................................24

*In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953 (N.D. Cal. 2016) ...........................23

*In re Cattle Antitrust Litig.*, 2021 WL 7757881 (D. Minn. Sept. 14, 2021) ................................24

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 2013 WL 4506000 (N.D. Ill. Aug. 23, 2013) ...........................................................................................................................21

*In re Testosterone Replacement Therapy Prods. Liability Litig. Coordinated Pretrial Proceedings*, 159 F. Supp. 3d 898 (N.D. Ill. 2016) ....................................................................10

*In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143 (E.D. Pa. 2009) .........................................21

*Inorio v. Wells Fargo Bank, N.A.*, 522 F. Supp. 3d 417 (N.D. Ill. 2021) .....................................18

*Kindred Hosps. E., LLC v. Loc. 464A United Food & Com. Workers Union Welfare Serv. Benefit Fund*, 2021 WL 4452495 (D.N.J. Sept. 29, 2021) ......................................................17

*Kostovetsky v. Ambit Energy Holdings, LLC*, 242 F. Supp. 3d 708 (N.D. Ill. 2017) ...................14

*Lachmund v. ADM Investor Servs., Inc.*, 191 F.3d 777 (7th Cir. 1999) .......................................22

*Lewis v. Casey*, 518 U.S. 343 (1996) ...........................................................................................20

*Lipshie v. Tracy Inv. Co.*, 566 P.2d 819 (Nev. 1977) ..................................................................18

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .................................................19

*M.T. v. Saum*, 7 F. Supp. 3d 701 (W.D. Ky. 2014)......................................................25

*Mashallah, Inc. v. W. Bend Mut. Ins. Co.*, 20 F.4th 311 (7th Cir. 2021).................................17, 18

*McCulloch v. PNC Bank Inc.*, 298 F.3d 1217 (11th Cir. 2002).......................................17

*McNeal v. J.P. Morgan Chase Bank, N.A.*, 2016 WL 6804585 (N.D. Ill. Nov. 17, 2016)......7, 8, 9

*Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328 (7th Cir. 2019).......................................10

*Midwest Grinding Co. v. Spitz*, 976 F.2d 1016 (7th Cir. 1992)...................................13, 14

*Mills v. Polar Molecular Corp.*, 12 F.3d 1170 (2d Cir. 1993) .....................................12

*Natara Multimedia Grp. Inc. v. Carranza*, 2015 WL 3814653 (N.D. Ill. June 17, 2015).............13

*Ne. Fence & Iron Works, Inc. v. Murphy Quigley Co.*, 933 A.2d 664 (Pa. Super. Ct. 2007)........18

*Nesby v. Country Mut. Ins. Co.*, 805 N.E.2d 241 (Ill. App. Ct. 2004)...........................18

*Ontiveros Insulation Co. v. Sanchez*, 3 P.3d 695 (N.M. Ct. App. 2000)..........................18

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) ...................................................20, 21

*Pa. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, 2010 WL 1979569 (N.D. Ill. 2010) ...............................................................................6, 12

*Pansini v. Trane Co.*, 2018 WL 1172461 (E.D. Pa. Mar. 6, 2018) .............................25

*Perlman v. Zell*, 185 F.3d 850 (7th Cir. 1999)...............................................13, 15, 16

*Peterson v. Kitsap Cmty. Fed. Credit Union*, 287 P.3d 27 (Wash. Ct. App. 2012).....................18

*Prescott v. Argen Corp.*, 2015 WL 94168 (N.D. Ill. Jan. 6, 2015)................................23

*Reiter v. Sonotone Corp.*, 442 U.S. 330 (1979) ...................................................14

*Reves v. Ernst & Young*, 507 U.S. 170 (1993)......................................................6

*Rivera v. Wyeth-Ayerst Lab'ys*, 283 F.3d 315 (5th Cir. 2002).......................................21

*Ryder v. Hyles*, 27 F.4th 1253 (7th Cir. 2022)...................................................14

*Simon v. E. Kentucky Welfare Rts. Org.*, 426 U.S. 26 (1976) ...................................20

*Toulon v. Continental Casualty Co.*, 877 F.3d 725 (7th Cir. 2017)................................19

*Triple 7, Inc. v. Intervet, Inc.*, 338 F. Supp. 2d 1082 (D. Neb. 2004)...........................25

iv

*United Food & Com. Workers Unions & Emps. Midwest Health Benefits Fund v. Walgreen Co.*, 2012 WL 3061859 (N.D. Ill. July 26, 2012) ...................................16

*United Food & Com. Workers Unions & Emps. Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849 (7th Cir. 2013) ...............................................................6

*United States v. Leahy*, 464 F.3d 773 (7th Cir. 2006) .....................................................13

*US Airways, Inc. v. McCutchen*, 569 U.S. 88 (2013) ......................................................17

*Vetco Concrete Co. v. Troy Lumber Co.*, 124 S.E.2d 905 (N.C. 1962)............................18

*Vorpahl v. Harvard Pilgrim Health Ins. Co.*, 2018 WL 3518511 (D. Mass. July 20, 2018) ........17

*Warth v. Seldin*, 422 U.S. 490 (1975) .............................................................................20

*Washa v. Miller*, 546 N.W.2d 813 (Neb. 1996)...............................................................18

## Statutes and Other Authority

18 U.S.C. § 1962(c) ............................................................................................................6

42 U.S.C. § 300gg-19 .......................................................................................................17

Fed. R. Civ. P. 9(b) ................................................................................................. *passim*

Gregory P. Joseph, *Civil Rico: A Definitive Guide* § 11(C)(3) (4th ed. 2015) ..............13

Restatement (Second) of Torts § 537 (Am. L. Inst. 1977) ..............................................22

**Introduction**

Plaintiffs are a group of customers who purchased Affordable Care Act health insurance policies from Centene Corp.'s subsidiaries. Plaintiffs contend that Defendants—Centene and two subsidiaries—committed fraud in the sale of health-insurance policies to customers in twenty-six states. Plaintiffs' complaint, however, is vague and deficient, and should be dismissed. Rhetoric aside, the crux of Plaintiffs' allegations is that Centene and its subsidiaries breached a contractual obligation to maintain up-to-date directories of in-network providers. Plaintiffs' allegations are insufficient to sustain their attenuated causes of action for civil RICO, unjust enrichment, and violation of state consumer protection laws.

Plaintiffs attempt to stretch their garden-variety breach claims into fraud claims by alleging that Defendants target low-income customers cycling in and out of Medicaid eligibility and do so through local subsidiaries. But the complaint contains no well-pled facts to support the notion that there is anything wrong with a parent company establishing subsidiaries to hold government insurance licenses or to provide coverage to people when they meet income eligibility requirements. Plaintiffs also assert that Defendants improperly use brand-name recognition by incorporating the names of subsidiaries in the titles of ACA plans. But, again, Plaintiffs' allegations fail to allege what is unlawful about this practice. Because of these and other fundamental deficiencies, the complaint should be dismissed.

*First*, Plaintiffs' civil RICO § 1962(c) claim is too vague to meet the governing pleading standards. It fails to distinguish the purported RICO enterprise from the allegedly liable "persons" (Centene and two of its subsidiaries); fails to identify any actual violations of the mail- and wire-fraud statutes; lumps together all Defendants without properly distinguishing their roles in allegedly conducting the affairs of the defined enterprise; and rests on violations of the ACA, which does not permit a private right of action.

1

**Second**, Plaintiffs' unjust enrichment claim fails because an express contract governs the relationship between Plaintiffs and Defendants. The unjust enrichment claim also must be dismissed for the independent reason that it relies on the same deficient allegations that Plaintiffs plead in support of their fraud-based claims.

**Third**, Plaintiffs' claims under the consumer protection laws of California, Kentucky, Nebraska, New Jersey, New Mexico, North Carolina, Pennsylvania, and Washington must be dismissed because Plaintiffs lack standing to bring claims based on the laws of states where no named Plaintiff resides or suffered an injury.

**Fourth**, Plaintiffs' state-law fraud allegations do not satisfy Rule 9(b). Further, class-actions under the Kentucky Consumer Protection Act are not permitted; Nebraska's Consumer Protection Act excepts conduct regulated by federal and state agencies; and allegations amounting to breach of contract are insufficient to sustain causes of action under the consumer protection laws of Illinois, Kentucky, Nebraska, New Jersey, New Mexico, North Carolina, and Pennsylvania.

## Facts[1]

Plaintiffs are consumers who purchased health-insurance policies offered by Centene's subsidiaries under the brand name "Ambetter" on the government marketplace established by the ACA. Compl. ¶ 1. Centene is a holding company; Centene Management LLC is subsidiary of Centene that provides services to other Centene subsidiaries; and Celtic Insurance Co. is a subsidiary that offers Ambetter Affordable Care Act (ACA) health insurance through the government's marketplace at healthcare.gov. Like all health-insurance companies, Centene and its subsidiaries are regulated by federal and state law. *See, e.g.*, *id.* ¶ 163. The complaint

---

[1] The facts in the complaint are assumed true for purposes of this motion only.

acknowledges that Ambetter plans are marketed primarily to persons seeking lower-cost insurance, and the plans do not purport to offer "gold-platinum type coverage." *Id.* ¶ 141. Rather, Ambetter plans offer a "value proposition" to lower-income customers to help them get health care at affordable rates. *Id.* This balance of value and cost makes Ambetter plans a popular choice on the ACA exchange. *See id.* ¶ 5.

Plaintiffs allege that Defendants are engaged in "an ever-expanding scheme to defraud primarily low-income consumers." *Id.* ¶ 11. They assert that Defendants misrepresent the size and makeup of their provider networks, causing customers to purchase inferior insurance policies not worth the (regulated) charged premiums. *Id.* ¶¶ 12, 15. However, the named Plaintiffs offer sparse support for this allegation.

Only three of the named Plaintiffs allegedly searched a provider directory—either themselves or through a broker—before purchasing Ambetter policies. *See, e.g.*, *id.* ¶¶ 30, 44, 78. Matthew Havrilla alleges that an unnamed rheumatologist listed as in-network before he purchased an Ambetter policy was no longer in-network at some undisclosed time after he purchased the policy. *Id.* ¶¶ 31–32. Similarly, Christopher Tilton alleges that, before purchasing an Ambetter policy, he confirmed that his then-current medical providers were in-network, but, at some undisclosed time after purchasing the policy, he discovered that two unnamed providers were out-of-network. *Id.* ¶¶ 79–81. Cynthia Dawson allegedly "checked to see whether Ambetter had a good list of in-network providers" before purchasing a policy and "believed that the plan had many in-network providers," though she does not allege that she purchased Ambetter insurance because any particular provider was in-network. *Id.* ¶¶ 44–45. The remaining Plaintiffs, Alden Henriksen, Melody DeSchepper, and Mark Hackett, do not allege reviewing anything before purchasing their

policies.  They allege only that at some point they had trouble finding in-network providers.  *See, e.g.*, *id.* ¶¶ 66, 72, 90.

None of the named Plaintiffs disclose when they searched the online directory.  Nor do the Plaintiffs disclose the names of the providers that allegedly were out-of-network.  Nor do they specify the providers they allegedly called, when they called these providers, and the substance of what was said.  Plaintiffs claim that "Ambetter plans routinely refuse to pay for medical services and medications that the plan purportedly covers."  *Id.* ¶ 13.  But none of the named Plaintiffs allege that this happened to them.

Plaintiffs allege that their difficulty finding in-network providers demonstrates that Defendants broke contractual promises made to them.  *See, e.g.*, *id.* ¶ 15.  Yet Plaintiffs fail to allege that they reviewed the terms of the applicable contracts prior to purchasing Ambetter policies, and they do not attach the contracts to the complaint.[2]  The insurance contracts vary to some degree state-by-state, based on input from state regulators, *see id.* ¶ 140 n.31, but in general the contracts provide that customers "have the right to . . . [a] *current list* of network providers" and "to . . . [b]e kept informed of covered and non-covered services" and "providers."  Ex. A at 6 (emphasis added).  However, they also generally state that "network[s] [are] *subject to change*."  *Id.* at 38 (emphasis added).  And the online provider directory explains that "[t]hroughout the year, the providers available in-network *may change*.  It is important that you review the provider

---

[2]  An example of the health insurance contract (called the Evidence of Coverage) as well as a disclaimer from the online directory are attached hereto.  *See* Ambetter of Illinois 2022 Evidence of Coverage, bit.ly/3EmDfRP (last visited Oct. 11, 2022) (Ex. A); Ambetter, *Out of Network Providers*, bit.ly/3RJzysn (last visited Oct. 11, 2022) (Ex. B).  "It is well settled that in deciding a Rule 12(b)(6) motion, a court may consider 'documents attached to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to his claim.'"  *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (alteration in original) (citation omitted).  Such is the case here.

directory for the **latest information** on whether or not the provider you are planning to see is in-network." Ex. B (emphasis added).

Plaintiffs characterize Defendants' offering of Ambetter ACA policies as a fraudulent business strategy resting on three, related pillars: "churn, leverage, and the targeting of low-income consumers." Compl. ¶ 122. Plaintiffs accuse Defendants of "leveraging both the name recognition and information in possession of" Centene subsidiaries providing Medicaid coverage to these customers. *Id.* ¶ 125. Yet the complaint does not (and cannot) allege that these practices are unlawful. In fact, elsewhere, Plaintiffs acknowledge that selling insurance through local subsidiaries is *de facto* required in the health-insurance industry. *See id.* ¶ 163. Plaintiffs nonetheless bring claims under the RICO statute, for unjust enrichment, and under several state consumer protection laws. *Id.* ¶¶ 191–341. Plaintiffs assert these claims not just on their own behalf but on behalf of a class of all persons who paid premiums for Ambetter policies between August 5, 2018 and the present while residing in twenty-six different states—a class estimated in the millions. *See id.* ¶¶ 180–83. The six named Plaintiffs, however, reside and purchased insurance in just five of those states—Arizona, Florida, Illinois, Nevada, and Texas. *Id.* ¶¶ 29, 43, 64, 70, 76, 89.

## Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Allegations in the complaint generally must be accepted as true. *See id.* That tenet, however, is inapplicable to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.*

"Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (citation

omitted). Moreover, "[i]n complex cases" involving RICO claims, "a fuller set of factual allegations . . . may be necessary to show that the plaintiff's claim is not largely groundless." *Pa. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, 2010 WL 1979569, at *5 (N.D. Ill. 2010) (quoting *Limestone Dev. Corp. v. Village of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008)).

**Reasons for Dismissal**

**I.      Plaintiffs Fail To State a Civil RICO Claim.**

**A.      Plaintiffs' Alleged "Enterprise" Fails the Distinctiveness Test.**

Plaintiffs allege a violation of 18 U.S.C. § 1962(c), which makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). To state a claim under this subsection, a plaintiff must identify a cognizable RICO "enterprise." *United Food & Com. Workers Unions & Emps. Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 853 (7th Cir. 2013). Further, the plaintiff must "identify a 'person'—*i.e.*, [a] defendant—that is distinct from the RICO enterprise." *Id.* The named "persons" (Defendants) must have "conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) (quoting 18 U.S.C. § 1962(c)). In other words, "[w]ithout a difference between the defendant and the 'enterprise' there can be no violation of RICO." *Baker v. IBP, Inc.*, 357 F.3d 685, 691–92 (7th Cir. 2004) (affirming dismissal of RICO claim where allegations established, at most, that a corporation "operate[d] *itself* unlawfully").

Here, Plaintiffs fail to allege a RICO violation because the so-called "Ambetter Enterprise" is not distinct from the "persons" that purportedly engaged in racketeering activity. The "Ambetter Enterprise," which Plaintiffs define as "Defendants Centene Corp., Centene Management, Celtic, and . . . 26 other Centene Corp. subsidiaries," Compl. ¶ 129, is nothing more than a corporate

parent and its subsidiaries and thus violates the long-established rule in the Seventh Circuit that "[a] firm and its employees, or a parent and its subsidiaries, are not an enterprise separate from the firm itself." *Bachman v. Bear, Stearns & Co.*, 178 F.3d 930, 932 (7th Cir. 1999).

An exception to this rule applies where "the enterprise's decision to operate through subsidiaries rather than divisions somehow facilitated its unlawful activity." *Bucklew v. Hawkins, Ash, Baptie & Co., LLP*, 329 F.3d 923, 934 (7th Cir. 2003). But Plaintiffs allege no facts to support the conclusory assertion that Centene's corporate structure and its use of subsidiaries to provide health-insurance plans at the state level "facilitates" any fraud. Merely alleging that "[e]ach subsidiary is functionally separate, with different rights and responsibilities, and performs different roles in the Enterprise," Compl. ¶ 152, fails to meet the heightened pleading standards for a RICO claim, yet it is all the complaint offers to circumvent the longstanding rule. The complaint purports to allege how the "Ambetter Enterprise" accomplishes the alleged scheme, but the activities described are all routine and perfectly legal—*e.g.*, each state-specific subsidiary has a license to sell insurance in that state. *See id.* ¶ 23; *see also Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 227 (7th Cir. 1997) ("What we cannot imagine, and what we do not find any support for in appellate case law, is applying RICO to a free-standing corporation such as Chrysler merely because Chrysler does business through agents, as virtually every manufacturer does. . . . What possible difference, from the standpoint of preventing the type of abuse for which RICO was designed, can it make that Chrysler sells its products to the consumer through franchised dealers rather than . . . through subsidiaries?").

These assertions of routine conduct carried out by subsidiaries are nothing more than "mere[] alleg[ations] that a pattern of predicate acts were committed by a corporation that has agents or affiliates," which "is insufficient to state a RICO claim." *McNeal v. J.P. Morgan Chase*

*Bank, N.A.*, 2016 WL 6804585, at *3–4 (N.D. Ill. Nov. 17, 2016). That a large health insurance company functions through subsidiaries and provides plans through separate state-level entities is both unsurprising and commonplace in the health-insurance industry, which is subject to rules and regulations that vary by state, thus making local subsidiaries key to ensuring compliance.[3] The complaint itself acknowledges this reality: "[I]t is extremely difficult for any single corporate entity to obtain the licenses and state Medicaid contracts in [multiple] states." Compl. ¶ 163. The separate legal incorporation of each subsidiary is not indicative of subsidiaries facilitating racketeering activity; it is, instead, well-accepted and lawful corporate practice. *See Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 772–73 (1984) ("[A] corporation may adopt the subsidiary form of organization for valid management and related purposes. . . . Especially in view of the increasing complexity of corporate operations, a business enterprise should be free to structure itself in ways that serve efficiency of control, economy of operations, and other factors dictated by business judgment."). For the same reasons, Plaintiffs' unsupported allegation that "Centene Corp. has specifically acquired and corrupted Defendant Celtic and other companies because they are licensed to sell health plans in certain states" does not show that Defendants

---

[3]   For example, United Healthcare discloses that its ACA policies are "offered by: UnitedHealthcare of Arizona, Inc.; Rocky Mountain Health Maintenance Organization, Incorporated in CO; UnitedHealthcare of Florida, Inc.; UnitedHealthcare of Georgia, Inc.; UnitedHealthcare of Illinois, Inc.; UnitedHealthcare Insurance Company in LA, TN and AL; Optimum Choice, Inc. in VA and MD; UnitedHealthcare Community Plan, Inc. in MI; UnitedHealthcare of North Carolina, Inc.; UnitedHealthcare of Oklahoma, Inc.; UnitedHealthcare of Texas, Inc.; and UnitedHealthcare of Oregon, Inc. in WA." UnitedHealthcare, *United Healthcare Individual and Family Marketplace (ACA) plans*, bit.ly/3VmeyuT (last visited Oct. 11, 2022). Similarly, Cigna states: "**For Arizona residents**, health plans are offered by Cigna HealthCare of Arizona, Inc. **For Georgia residents**, health plans are offered by Cigna HealthCare of Georgia, Inc. **For Illinois residents**, health plans are offered by Cigna HealthCare of Illinois, Inc. **For North Carolina residents**, health plans are offered by Cigna HealthCare of North Carolina, Inc." Cigna, *Bronze, Silver, Gold, and Platinum Health Plans*, bit.ly/3yAVL55 (last visited Oct. 11, 2022).

engaged in racketeering activity. *See id.* ¶ 160. Rather, it is perfectly legal for a health insurance company to acquire companies with state licenses that are otherwise difficult to obtain.

Plaintiffs also emphasize Defendants' plan-naming conventions, suggesting that the use of subsidiaries' names in the titles of Ambetter plans is key to perpetrating the alleged scheme. *See, e.g.*, Compl. ¶¶ 21–23. But there are no well-pled facts that there is anything nefarious about tying the name of a state subsidiary to the ACA plan offered to residents of that state. Nor is it misleading to use the same brand name for two different products offered by the same company. It is common knowledge that many companies apply a single brand name to a range of varying products.

*McNeal* is instructive. There, a homeowner alleged that the handling of her mortgage was unlawful and asserted a variety of claims, including RICO, against a family of JP Morgan Chase entities. *McNeal*, 2016 WL 6804585, at *1. The defendants moved to dismiss, arguing that the plaintiff failed to identify a person that was distinct from the RICO enterprise. The court agreed, concluding that the plaintiff merely alleged that "members of a corporate family were both the persons and the enterprise." *Id.* at *4. The court further held that even if the plaintiff "had sufficiently pled the existence of a distinct enterprise, she did not adequately allege that the Chase defendants (and their employees and agents) were conducting the affairs of a criminal enterprise, rather than their own affairs (even if unlawful)." *Id.* The same is true here. Even if the complaint demonstrated that Defendants were distinct from the alleged Ambetter Enterprise (it does not), "[a]t best, [Plaintiffs'] allegations amount to an argument that affiliates within the [Centene] corporate family unlawfully carried out their [insurance-related] businesses." *See id.*

In seeking to transform Centene's commonplace corporate structure into a RICO enterprise, Plaintiffs wander far afield of the statute's text and purpose. Because Plaintiffs fail to plead an enterprise that is distinct from Defendants, the RICO claim must be dismissed.

9

### B.  Plaintiffs' Mail and Wire Fraud Allegations Do Not Satisfy Rule 9(b).

The RICO claim also must be dismissed because Plaintiffs' fraud allegations do not satisfy Rule 9(b).  "[W]here, as here, a plaintiff seeks to plead RICO's pattern element through predicate acts of mail or wire fraud[,] . . . the heightened pleading requirements of Fed. R. Civ. P. 9(b) apply and require a plaintiff to do more than allege fraud generally."  *Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 338 (7th Cir. 2019).  Specifically, "Rule 9(b) requires a plaintiff alleging fraud to plead the 'who, what, when, where, and how of the fraud.'"  *In re Testosterone Replacement Therapy Prods. Liab. Litig. Coordinated Pretrial Proceedings*, 159 F. Supp. 3d 898, 920 (N.D. Ill. 2016) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014)).  Also, "in a multiple defendant case, Rule 9(b) requires a RICO plaintiff to plead sufficient facts to notify each defendant of his alleged participation in the scheme."  *Gavin v. AT&T Corp.*, 543 F. Supp. 2d 885, 897 (N.D. Ill. 2008).

*First*, Plaintiffs fail to allege the what, when, and how of Defendants' purported fraud. Plaintiffs' theory of liability rests on their allegation that "the provider networks for Ambetter plans that are presented to plan members and potential members" are inaccurate and that "plan members have difficulty finding an in-network provider" as a result.  *See* Compl. ¶ 12.  Yet three of the named Plaintiffs—Alden Henriksen, Melody DeSchepper, and Mark Hackett—do not allege that they consulted a provider directory before purchasing Ambetter plans, much less that they purchased Ambetter plans because they saw certain providers listed in a directory.  *See id.* ¶¶ 64– 69, 70–75, 89–101.  Instead, they generally allege that they had trouble finding in-network providers.  *See id.* ¶¶ 66, 72, 90.  And the named Plaintiffs who do claim to have looked at a directory before purchasing Ambetter plans—Matthew Havrilla, Cynthia Dawson, and Christopher Tilton—do not allege when they discovered that their preferred providers were no longer in-network.  *See id.* ¶¶ 31–32, 79–81.  These allegations, therefore, do not show that the

directories were inaccurate at the time these Plaintiffs claim to have been fraudulently induced to purchase Ambetter insurance. In light of Defendants' promise to provide only "a **current** list of network providers," and the contractual notice that the list of network providers is "**subject to change**," these deficiencies are fatal. Ex. A at 6, 38 (emphases added).

Plaintiffs' allegations therefore do not "describe the predicate acts of fraud" with the requisite specificity and do not "state the time, place, and content of the alleged communications perpetrating the fraud." *Del. Motel Assocs., Inc. v. Cap. Crossing Servicing Co.*, 2017 WL 4224618, at *4 (N.D. Ill. Sept. 22, 2017) (quoting *Goren, v. New Vision Int'l, Inc.*, 156 F.3d 721, 726 (7th Cir. 1998)). In *Delaware Motel*, the Court considered allegations regarding commercial real estate loans based on false and inflated appraisals. *See id.* at *2. With respect to one of the defendant law firms, the plaintiffs "allege[d] only that unspecified 'attorneys,' including attorneys at [the firm], among other law firms," perpetrated the alleged fraud. *Id.* at *4 (citation and internal quotation marks omitted). The plaintiffs, however, failed to "specify the date on which any of the loan documents were prepared or which law firms prepared which loan documents; nor d[id] they allege that [the firm] prepared any of the loan documents that allegedly resulted in any of the individual plaintiffs' injuries." *Id.* Like the deficient allegations in *Delaware Motel*, Plaintiffs' allegations here do not identify when a provider directory was reviewed or the names of any providers that were contacted. These allegations thus "lack the specificity Rule 9(b) requires." *See id.*

*Second*, Plaintiffs fail to plead with sufficient particularity who engaged in the purported fraud. Rather than describe the role of each defendant in perpetrating the alleged scheme, the complaint "simply treats all the defendants as one; such 'lumping together' of defendants is clearly insufficient to state a RICO claim under § 1962(c)." *Goren*, 156 F.3d at 730 (affirming dismissal

of RICO claim for failure to provide sufficient detail concerning who was involved in each allegedly fraudulent activity). The complaint describes "Defendants' scheme . . . to deceive consumers" and suggests that "Defendants made false representations . . . about the benefits [consumers] would receive under their Ambetter plans." Compl. ¶ 143–44. These misrepresentations purportedly can be found in "[t]he evidence of coverage and various marketing material promulgated by Defendants." *Id.* ¶ 146. Thus, according to Plaintiffs, every time Defendants sent "current or potential Ambetter plan members" plan documents, Defendants committed mail fraud. *Id.* ¶ 148. And every time "a member of the Ambetter Enterprise electronically filed Ambetter plan documents with a state's online exchange" or "sent an email to a plan member or potential customer," Defendants committed wire fraud. *Id.* ¶ 149. That is an overreach, and it fails Rule 9(b) by treating Defendants as one and the same.

Absent from these allegations is a supposed explanation of how each individual Defendant committed a RICO predicate act. Plaintiffs assert generally that "Defendants Centene Corp. and Centene Management designed the Ambetter plan and originated the scheme to defraud." *Id.* ¶¶ 23, 160. And they claim that "Defendant Centene Management coordinates between the various Centene Corp. subsidiaries." *Id.* But at no point do Plaintiffs connect actual violations of the mail- and wire-fraud statutes to individual Defendants. Instead, Plaintiffs allege that "[t]he Ambetter Enterprise defrauded Plaintiffs by selling them Ambetter plans that had neither the full benefits required by law nor the full benefits represented to Plaintiffs in plan documents." *Id.* ¶ 151. "Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'" *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) (citation omitted) (affirming dismissal of securities fraud claim because plaintiffs did not "link[] the alleged fraudulent statements to particular [defendants]"); *see also Pa. Chiropractic Ass'n*, 2010 WL

1979569, at *11 ("[A]ll plaintiffs may not lump together all defendants in a single section 1962(c) claim.").

### C. Plaintiffs' Complaint Sounds in Breach of Contract and Fails To Adequately Allege Intent To Defraud.

Plaintiffs' RICO claim must be dismissed for the independent reason that the complaint fails to adequately allege that Defendants acted with the fraudulent intent necessary for mail or wire fraud. Instead, Plaintiffs' allegations amount, at most, to claims for breach of contract, which cannot support a RICO claim.

The elements of mail and wire fraud are "(1) a scheme to defraud; (2) an intent to defraud; and (3) use of the mails or wires in furtherance of the scheme." *United States v. Leahy*, 464 F.3d 773, 786 (7th Cir. 2006). Plaintiffs assert fraudulent inducement, "a disfavored cause of action . . . because [such] fraud is easy to allege and difficult to prove or disprove." *Bower v. Jones*, 978 F.2d 1004, 1012 (7th Cir. 1992). But, in addition to failing to allege with particularity the specifics of the purported scheme to defraud, *see supra* pp. 10–12, Plaintiffs also fail to adequately allege that Defendants intended to deceive consumers. Instead, Plaintiffs' allegations show, at most, that Defendants' broke contractual promises. *See infra* pp. 14–16. Because "[b]reach of contract is not fraud, and a series of broken promises therefore is not a pattern of fraud," Plaintiffs' RICO claim must be dismissed. *See Perlman v. Zell*, 185 F.3d 850, 853 (7th Cir. 1999); *see also* Gregory P. Joseph, *Civil Rico: A Definitive Guide* § 11(C)(3) (4th ed. 2015) ("A simple breach of contract . . . do[es] not constitute actionable mail or wire fraud.").

"Congress enacted RICO in an attempt to eradicate organized, long-term criminal activity." *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1019 (7th Cir. 1992). RICO "was not designed to permit plaintiffs to cast run-of-the-mill, state-law breach of contract and fraud claims as federal RICO actions." *Natara Multimedia Grp. Inc. v. Carranza*, 2015 WL 3814653, at *6 (N.D. Ill.

June 17, 2015). Yet "civil RICO plaintiffs persist in trying to fit a square peg in a round hole by squeezing garden-variety business disputes into civil RICO actions." *Midwest Grinding*, 976 F.2d at 1025. Plaintiffs do just that. They shroud their alleged injuries in allegations of fraud, but the complaint plainly seeks to recover for alleged breaches of contract.

Tellingly, every allegation of fraud is based on Defendants' alleged failure to fulfill promises included in "the evidence of coverage, which is the ***contract*** between the consumer and the insurer." Compl. ¶ 139 (emphasis added).[4] Those purported contractual promises include "the right to . . . [r]eceive the benefits for which [enrollees] have coverage," "the right to . . . [b]e kept informed of covered and non-covered services," and "the right to . . . [a] ***current list*** of network providers." *Id.* ¶ 140 (emphasis added); *see also id.* ¶ 144 (alleged false representations concern "the benefits [enrollees] would receive under their Ambetter plans," or contracts). But those promises are also subject to the disclaimer that the provider network "is ***subject to change***." Ex. A at 38 (emphasis added).

Even assuming that Defendants failed to fulfill these contractual obligations, it does not follow that Defendants fraudulently induced Plaintiffs to purchase Ambetter insurance. Critically, to allege fraudulent inducement, Plaintiffs must allege intent to deceive at the time a promise was made. *See Kostovetsky v. Ambit Energy Holdings, LLC*, 242 F. Supp. 3d 708, 724 (N.D. Ill. 2017) ("When distinguishing run-of-the-mill broken promises and breached contracts from RICO fraud,

---

[4] Plaintiffs also allege personal injuries. *See, e.g.*, Compl. ¶¶ 36, 62, 85. Section 1962(c), however, excludes personal injuries. *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979); *see also Ryder v. Hyles*, 27 F.4th 1253, 1257 (7th Cir. 2022) ("The requirement that civil RICO plaintiffs allege an injury to 'business or property' serves to 'preclude recovery for personal injuries and the pecuniary losses incurred there-from.'" (citation omitted)). What's more, the personal injuries alleged are far too disconnected from Defendants' alleged conduct to give rise to a viable claim. Thus, to the extent Plaintiffs' RICO claim rests on alleged personal injuries, the claim must be dismissed.

the second element of mail and wire fraud is crucial:  there must be evidence of intent to defraud.").  The complaint is devoid of allegations sufficient to show such intent.

Plaintiffs argue that "Defendants' intent to defraud is evidenced by their conduct."  Compl. ¶ 203.  What follows that assertion, however, are vague and conclusory allegations of directory inaccuracies, lawsuits, and regulatory actions, all of which fail to clear the "difficult" hurdle of "recast[ing] a dispute about broken promises into a claim of racketeering under RICO."  *See Perlman*, 185 F.3d at 853.  Plaintiffs claim that "the defects in the Ambetter plans (e.g., fake lists of in-network providers) are consistent across the plans offered in 26 states."  Compl. ¶ 203.  But given Plaintiffs' theory that each state-specific subsidiary plays a separate role in the purported enterprise, *id.* ¶¶ 20, 152, as well as their own assertions of disparate directory problems in Plaintiffs' home states, *id.* ¶¶ 30–32, 44–48, 65–66, 72, 78–81, 91–92, that allegation is facially implausible.  Moreover, nowhere in the complaint do Plaintiffs plead with specificity defects in the Ambetter plans across the 26 different states, nor do they establish Defendants' knowledge of such alleged defects.

Plaintiffs allege that "the shortcomings of the Ambetter plans have been known to Defendants for years as a result of lawsuits and regulatory actions."  *Id.* ¶ 203.  But the only ostensibly relevant lawsuit or regulatory action referenced anywhere in the complaint is a settlement agreement between a Washington-based Centene subsidiary and Washington's insurance regulator.  *See id.* ¶ 25.  Defendants' knowledge of this agreement with a regulator in Washington fails to establish knowledge of issues in other states, and it cannot show intent, especially because the agreement notes that the issue had been fixed, and each different state subsidiary maintains a distinct, state-specific provider network in that state, which is locally regulated.  Elsewhere, Plaintiffs point to settlements between Centene and certain states' Medicaid

departments relating to the cost of medication, *see id.* ¶¶ 118–19, but those allegations have nothing at all to do with the complaints made by Plaintiffs in this case about ACA provider networks.

At a minimum, "'[i]n order to survive the pleading stage, a claimant must be able to point to specific, objective manifestations of fraudulent intent.' Without requiring such objective manifestations nearly every breach-of-contract claim could be transformed into a RICO predicate act of mail and wire fraud because practically every business arrangement makes use of the mails and wires." *Bankcard Am., Inc. v. Elliott*, 1994 WL 494843, at *4 (N.D. Ill. Sept. 8, 1994) (quoting *Bower*, 978 F.2d at 1012). Plaintiffs allege nothing more than that Defendants broke promises made to consumers. *See Carr v. Tillery*, 591 F.3d 909, 918 (7th Cir. 2010) (Plaintiffs' "allegations amount merely to a breach of contract claim, which cannot be transmogrified into a RICO claim by the facile device of charging that the breach was fraudulent."). Because "[b]reach of contract is not fraud," Plaintiffs fail to plead predicate acts, and their RICO claim must be dismissed. *See Perlman*, 185 F.3d at 852–53.

### D. Plaintiffs' Allegations that Defendants Violated ACA Requirements Cannot Give Rise to a RICO Claim.

Plaintiffs' characterization of ACA violations as mail and wire fraud, *see, e.g.*, Compl. ¶¶ 134–35, 202, is unavailing because "RICO claims cannot be predicated upon violations of state or federal laws that do not create a private cause of action and exclusively provide administrative remedies." *United Food & Com. Workers Unions & Emps. Midwest Health Benefits Fund v. Walgreen Co.*, 2012 WL 3061859, at *3 (N.D. Ill. July 26, 2012), *aff'd*, 719 F.3d 849 (7th Cir. 2013); *see also Ayres v. Gen. Motors Corp.*, 234 F.3d 514, 524 (11th Cir. 2000) ("Congress did not intend for a violation of the Safety Act to be the basis for a private civil RICO action, which would permit unlimited, trebled damages.").

The ACA does not permit a private right of action other than for discrimination. *See, e.g.*, *Air Evac EMS, Inc. v. USAble Mut. Ins. Co*., 931 F.3d 647, 650 (8th Cir. 2019); *Kindred Hosps. E., LLC v. Loc. 464A United Food & Com. Workers Union Welfare Serv. Benefit Fund*, 2021 WL 4452495, at *10 (D.N.J. Sept. 29, 2021); *Vorpahl v. Harvard Pilgrim Health Ins. Co*., 2018 WL 3518511, at *5 (D. Mass. July 20, 2018). "[S]ince Congress did not intend for Plaintiffs to have a private right of action against" health plans for failing to satisfy ACA requirements, "and instead provided administrative remedies," *see, e.g.*, 42 U.S.C. § 300gg-19, "it follows that Congress could not have intended for that same failure to . . . constitute a violation of the mail and wire fraud statute," *see McCulloch v. PNC Bank Inc.*, 298 F.3d 1217, 1226–27 (11th Cir. 2002) (applying rule to alleged violations of the Higher Education Act of 1965); *see also Danielsen v. Burnside-Ott Aviation Training Ctr., Inc.*, 941 F.2d 1220, 1229 (D.C. Cir. 1991) ("The inarguable fact that a RICO remedy will lie in addition to penalties or remedies provided for one statute or set of statutes does not answer or even bear relevance to the question whether a RICO remedy will lie for the breach of another statute."). Thus, to the extent Plaintiffs' RICO claim is premised on alleged ACA violations, the claim must be dismissed.

## II.     Plaintiffs Fail To State a Claim for Unjust Enrichment.

### A.     Unjust Enrichment Does Not Lie Where a Contract Exists.

Plaintiffs allege that they entered into contracts with Defendants for ACA health insurance. *See, e.g.*, Compl. ¶ 140. That allegation dooms any unjust enrichment claim: "A claim for unjust enrichment is 'based upon an implied contract; where there is a specific contract that governs the relationship of the parties, the doctrine has no application.'" *Mashallah, Inc. v. W. Bend Mut. Ins. Co*., 20 F.4th 311, 324–25 (7th Cir. 2021) (quoting *Blythe Holdings, Inc. v. DeAngelis*, 750 F.3d 653, 658 (7th Cir. 2014)); *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 98 (2013) (quoting Restatement (Third) of Restitution and Unjust Enrichment § 2(2) (Am. Law Inst. 2011)) ("A valid

contract defines the obligations of the parties as to matters within its scope, displacing to that extent any inquiry into unjust enrichment."). The law is the same in each of the alleged state subclass jurisdictions. *See Brooks v. Valley Nat. Bank*, 548 P.2d 1166, 1171 (Ariz. 1976) (en banc); *Durell v. Sharp Healthcare*, 108 Cal. Rptr. 3d 682, 699-700 (Ct. App. 2010); *Diamond "S" Dev. Corp. v. Mercantile Bank*, 989 So. 2d 696, 697 (Fla. Dist. Ct. App. 2008) (per curiam); *Nesby v. Country Mut. Ins. Co.*, 805 N.E.2d 241, 243 (Ill. App. Ct. 2004); *Codell Const. Co. v. Commonwealth*, 566 S.W.2d 161, 165 (Ky. Ct. App. 1977); *Washa v. Miller*, 546 N.W.2d 813, 818–19 (Neb. 1996); *Lipshie v. Tracy Inv. Co.*, 566 P.2d 819, 824 (Nev. 1977); *Duffy v. Charles Schwab & Co.*, 123 F. Supp. 2d 802, 814 (D.N.J. 2000); *Ontiveros Insulation Co. v. Sanchez*, 3 P.3d 695, 699 (N.M. Ct. App. 2000); *Vetco Concrete Co. v. Troy Lumber Co.*, 124 S.E.2d 905, 908 (N.C. 1962); *Ne. Fence & Iron Works, Inc. v. Murphy Quigley Co.*, 933 A.2d 664, 669 (Pa. Super. Ct. 2007); *Peterson v. Kitsap Cmty. Fed. Credit Union*, 287 P.3d 27, 39 (Wash. Ct. App. 2012).

### B. Plaintiffs' Unjust Enrichment Claim Fails Because Plaintiffs Have an Adequate Remedy at Law.

"Because it is an equitable remedy, unjust enrichment is only available when there is no adequate remedy at law." *Inorio v. Wells Fargo Bank, N.A.*, 522 F. Supp. 3d 417, 425 (N.D. Ill. 2021). Plaintiffs state that they "have no adequate remedy at law," Compl. ¶ 215, but cite nothing to support that assertion. Indeed, the facts alleged in the complaint contradict that assertion because breach of contract would be an adequate legal remedy for the harms alleged. *See Mashallah*, 20 F.4th at 325 ("'[N]o implied contract can exist where an express one governs because no equitable remedy'—restitution based on unjust enrichment—'can lie where a legal one'—contractual damages—'is available.'" (citation omitted)).

### C. Plaintiffs' Unjust Enrichment Claim Must Be Dismissed Because It Is Based on a Deficient RICO Claim.

"Unjust enrichment does not constitute an independent cause of action" but instead "is a condition that may be brought about by unlawful or improper conduct as defined by law." *Toulon v. Continental Casualty Co.*, 877 F.3d 725, 741 (7th Cir. 2017) (citation omitted); *see also Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) ("[T]here is not a standalone cause of action for 'unjust enrichment.'" (citation omitted)). Thus, Plaintiffs' unjust enrichment claim hinges on the viability of Plaintiffs' RICO claim. *See* Compl. ¶¶ 212, 217 (incorporating RICO allegations and asking Court to compel Defendants to disgorge "proceeds that they unjustly received as a result of their pattern of racketeering activity"). An unjust enrichment claim based on a deficient RICO claim likewise must be dismissed.[5] *See Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011) ("[I]f an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim.").

### III. Plaintiffs Lack Standing To Raise Claims Based on the Laws of States Where No Named Plaintiff Resides or Suffered an Injury.

To establish Article III standing, plaintiffs must demonstrate (1) an injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Plaintiffs allege that they are citizens of Arizona, Florida, Illinois, Nevada, and Texas. Compl. ¶¶ 29–101. Yet Plaintiffs assert claims pursuant to the consumer protection laws of other states—namely, California, Kentucky, Nebraska, New Jersey, New Mexico, North Carolina, Pennsylvania, and Washington. No named Plaintiff is a citizen of or alleges that they

---

[5] The deficient state consumer protection claims, for the same reason, cannot support an unjust enrichment claim. *See infra* pp. 19–25.

received services in any of these eight states. *Id.* ¶¶ 229–38, 251–72, 283–341. Plaintiffs thus lack standing to bring a claim under the laws of any of these states.

Whether Plaintiffs must establish standing at the pleading stage to pursue claims under the laws of states where Plaintiffs do not reside or cannot claim to have personally suffered an injury, or whether standing need only be established at the class certification stage, is an open question in this circuit. *See Baldwin v. Star Sci., Inc.*, 78 F. Supp. 3d 724, 733–34 (N.D. Ill. 2015) (describing the split). The better rule is that state-law claims without a named plaintiff should be dismissed at the pleadings stage because Article III standing is traditionally a "threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). And "standing is not dispensed in gross." *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996). "[A] plaintiff must demonstrate standing for each claim he seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). "That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 40 n.20 (1976) (quoting *Warth*, 422 U.S. at 502).

Admittedly, some courts in this circuit have read two Supreme Court decisions—*Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999), and *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997)—to require courts to address standing at the class certification phase. But neither *Ortiz* nor *Amchem* ***require*** courts to defer addressing Article III standing; nor did either case implicitly overrule decades of standing jurisprudence. *Ortiz* and *Amchem* arose in a unique posture. Both ***simultaneously*** involved the issues of class certification and standing in the context of mandatory global settlements. Not so here. *Ortiz* and *Amchem* also each dealt with the standing of absent

class members, not the standing of named plaintiffs. In contrast to *Ortiz* and *Amchem*, the present standing issue "would exist whether [Plaintiffs] filed [their] claim alone or as part of a class; class certification d[oes] not create the jurisdictional issue." *Rivera v. Wyeth-Ayerst Laboratories*, 283 F.3d 315, 319 n.6 (5th Cir. 2002) (citation omitted); *see also Easter v. Am. W. Fin.*, 381 F.3d 948, 962 (9th Cir. 2004) (*Ortiz* "does not require courts to consider class certification before standing"). Because class certification is not "logically antecedent" to Plaintiffs' standing, justiciability should be addressed now. *See Ortiz*, 527 U.S. at 831 (citation omitted); *see also In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 2013 WL 4506000, at *6 (N.D. Ill. Aug. 23, 2013) (agreeing with courts interpreting "*Ortiz* as requiring a court simultaneously facing both class certification and Article III standing to deal with Rule 23 issues first when they are dispositive, but not directing district courts to postpone an inquiry into the threshold issue of justiciability outside of that context").

Resolving Plaintiffs' standing now also conserves judicial and party resources, if any part of this case is to go forward. The alternative outcome would allow Plaintiffs, "with no injuries in relation to the laws of certain states referenced in their complaint, to embark on lengthy class discovery with respect to injuries" in those states. *See In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 154, 155 (E.D. Pa. 2009). The Court should "not indulge in the prolonged and expensive implications of [Plaintiffs'] position only to be faced with the same problem months down the road." *Id.* Plaintiffs' claims based on states' laws where there is no named Plaintiff should be dismissed, especially in a case like this where Plaintiffs challenge activities that are locally regulated in each state.

IV.     **Plaintiffs Fail To State a Claim Under State Consumer Protection Laws.**

A.      **Like Their Federal Claims, Plaintiffs' State-Law Fraud Allegations Do Not Satisfy Rule 9(b).**

State-law claims that sound in fraud must be pled with particularity under Rule 9(b).  *See Lachmund v. ADM Inv. Servs., Inc.*, 191 F.3d 777 (7th Cir. 1999).  All of Plaintiffs' state consumer protection claims use the quintessential language of fraud, *see, e.g.*, Compl. ¶ 224 ("falsely representing" facts about the provider network and "falsely promising" coverage), and therefore "implicate Rule 9(b)'s heightened pleading requirements."  *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (applying Rule 9(b) where state-law claims were "not by definition fraudulent torts" but were "premised upon a course of fraudulent conduct" and theory of fraud "pervade[d] [the plaintiffs'] entire case").  For the same reasons that Plaintiffs' RICO claim fails under Rule 9(b), Plaintiffs' vague and generalized state-law claims do not satisfy Rule 9(b).  *See supra* Section I.B.

Plaintiffs' state-law claims fail for the additional reason that Plaintiffs do not adequately plead that they relied on Defendants' allegedly fraudulent misrepresentations.  *See* Restatement (Second) of Torts § 537 (Am. L. Inst. 1977) ("The recipient of a fraudulent misrepresentation can recover from the maker for his pecuniary loss only if he in fact relies upon the misrepresentation in acting or in refraining from action, and his reliance is a substantial factor in bringing about the loss.").  The complaint alleges that Cynthia Dawson "checked to see whether Ambetter had a good list of in-network providers" and that she "believed that the plan had many in-network providers" as a result.  *See* Compl. ¶¶ 44–45.  But she does not allege that she purchased an Ambetter plan because a particular provider was listed as in-network.  Neither Alden Henriksen nor Melody DeSchepper allege that they reviewed the policy before purchasing Ambetter plans or otherwise relied on any statements in the policy.  *See id.* ¶¶ 64–69, 70–75.  Mark Hackett alleges that he

22

relied on a directory when scheduling appointments, but he does not allege that he reviewed the policy before purchasing his Ambetter plan or otherwise relied on any statements in the policy when deciding whether to do so. *See id.* ¶¶ 89–101. Matthew Havrilla and Christopher Tilton allege in conclusory fashion that a directory played some role in their decision to purchase Ambetter plans. *See id.* ¶¶ 30–31, 78. Notably, however, they omit the dates when they searched a directory (both before and after purchasing a policy), what directory they searched, and the names of providers allegedly no longer in-network. In short, Plaintiffs' vague allegations "omit the particular circumstances of [their] reliance—e.g., the approximate date of their reliance, the specific documents on which they relied, the specific misstatements within the documents on which they relied, or how any misstatements caused plaintiffs to rely on them." *Prescott v. Argen Corp.*, 2015 WL 94168, at *3 (N.D. Ill. Jan. 6, 2015). And vague references to "Plaintiffs' relying on 'advertising materials' and 'representations'" do not satisfy Rule 9(b). *See id.*

### B. Plaintiffs Do Not State a Claim Under the Kentucky, Nebraska, Illinois, New Jersey, New Mexico, North Carolina, and Pennsylvania Consumer Protection or Consumer Fraud Statutes.

Even if Plaintiffs' allegations satisfied Rule 9(b), their claims under the Kentucky, Nebraska, Illinois, New Jersey, New Mexico, North Carolina, and Pennsylvania consumer protection statutes suffer from independent deficiencies and must be dismissed.

*First*, the complaint purports to state a claim under the Kentucky Consumer Protection Act ("KCPA") "on behalf of members of the putative Kentucky Class." Compl. ¶ 252. But "Plaintiffs can not maintain a putative class action claim under the KCPA." *See In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 1001 (N.D. Cal. 2016) (noting "the common theme running through . . . the[] cases" is that "plaintiffs can not pursue a class action claim under the KCPA"); *see also Arnold v. Microsoft Corp.*, 2000 WL 36114007, at *8 (Ky. Cir. Ct. July 21, 2000) (holding, "[b]ased on venue requirements and other language" of the KCPA, that the KCPA "was never

meant to encompass class action litigants"), *aff'd* 2001 WL 1835377 (Ky. Ct. App. Nov. 21, 2001). Plaintiffs' claim under the KCPA must be dismissed for this reason alone.[6]

*Second*, Plaintiffs' claim under the Nebraska Consumer Protection Act ("NCPA") fails because that statute "expressly exempts certain activities of heavily regulated businesses." *Hage v. Gen. Servs. Bureau*, 306 F. Supp. 2d 883, 889 (D. Neb. 2003); *see* Neb. Rev. Stat. Ann. § 59-1617(1) ("[T]he Consumer Protection Act shall not apply to actions or transactions otherwise permitted, prohibited, or regulated under laws administered by the Director of insurance . . . or any other regulatory body or officer acting under statutory authority of this state or the United States."). Here, the complaint acknowledges that the very conduct about which Plaintiffs complain is subject to regulations promulgated by the Department of Health and Human Services. *See, e.g.*, Compl. ¶ 132 ("Ambetter plans do not 'publish an *up-to-date, accurate, and complete provider directory* . . .' as required by 45 C.F.R. § 156.230(b)(2)."). Because NCPA's "broad" exception "applies to all conduct regulated by federal agencies," *In re Cattle Antitrust Litig.*, 2021 WL 7757881, at *13 (D. Minn. Sept. 14, 2021) (citation omitted), the NCPA claim must be dismissed.

*Third*, Plaintiffs allege nothing more than garden-variety breach of contract, *see supra* Section I.C, foreclosing their claims under the Illinois Consumer Fraud and Deceptive Business Practices Act, the KCPA, the NCPA, the New Jersey Consumer Fraud Act, the New Mexico Unfair Practices Act, the North Carolina Unfair and Deceptive Practices Statute, and the Pennsylvania Unfair Trade Practices and Consumer Protection Law because these statutes are inapplicable to breaches of contract. *See Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 844 (Ill. 2005) ("A breach of contractual promise, without more, is not actionable under the [Illinois] Consumer

---

[6] Because none of the named Plaintiffs reside in Kentucky, Plaintiffs cannot pursue an individual claim under the KCPA either. *See supra* pp. 19–21.

Fraud Act."); *M.T. v. Saum*, 7 F. Supp. 3d 701, 705 (W.D. Ky. 2014) ("The mere failure to perform a contract will not trigger application of the KCPA."); *Triple 7, Inc. v. Intervet, Inc.*, 338 F. Supp. 2d 1082, 1087 (D. Neb. 2004) ("In order to state a claim under the [N]CPA, a plaintiff must show aggravating factors indicating that the act in question is more than a mere breach of contract."); *Coda v. Constellation Energy Power Choice, LLC*, 409 F. Supp. 3d 296, 301 (D.N.J. 2019) (requiring allegations of a "substantial aggravating circumstance" "when a [New Jersey Consumer Fraud Act] claim is based on a breach of contract" (quoting *Suber v. Chrysler Corp.*, 104 F.3d 578, 587 (3d Cir. 1997)); *Carl Kelley Constr. LLC v. Danco Techs.*, 656 F. Supp. 2d 1323, 1339 (D.N.M. 2009) ("A [New Mexico Unfair Practices Act] claim is more like a tort claim than a contract claim."); *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 347 (4th Cir. 1998) ("[A] mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under [the North Carolina Unfair and Deceptive Practices Statute]." (citation omitted)); *Pansini v. Trane Co.*, 2018 WL 1172461, at *6 (E.D. Pa. Mar. 6, 2018) ("If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract . . . then the claim is to be viewed as one for breach of contract" and barred by the gist of the action doctrine.) (quoting *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 68 (Pa. 2014)). Plaintiffs therefore do not state a claim under these statutes.

## Conclusion

For the foregoing reasons, Defendants respectfully request that the complaint be dismissed.

Dated: October 11, 2022

Respectfully submitted,

Williams & Connolly LLP

By: _/s/ Steven M. Cady_
George A. Borden
Steven M. Cady
Andrew L. Hoffman (*pro hac vice*
application forthcoming)

25

680 Maine Avenue SW
Washington, DC 20024
(202) 434-5321
scady@wc.com

*Counsel for Defendants*

**Certificate of Service**

I hereby certify that on this 11th day of October, 2022, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will serve this document on all counsel of record via transmission of Notices of Electronic Filing.

_/s/ Steven M. Cady_____