**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Matthew Havrilla, Cynthia Dawson, Alden Henriksen, Melody Deschepper, Christopher Tilton, and Mark Hackett, individually and on behalf of all others similarly situated, | )<br>)<br>)<br>)<br>) |
| Plaintiffs, | )<br>) Case No. 1:22-cv-04126<br>) |
| v. | ) Judge Nancy L. Maldonado<br>) |
| Centene Corporation,<br>Centene Management Company LLC, and<br>Celtic Insurance Company, | ) Oral Argument Requested<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**
**PLAINTIFFS' CLASS ACTION COMPLAINT**

# Table of Contents

Introduction ............................................................................................................... 1

I.      Plaintiffs Fail To State a Civil RICO Cause of Action. ..................................... 1

     A.     Plaintiffs Cannot Meet the "Distinctiveness" Test. ................................... 1

     B.     Plaintiffs' Complaint Fails Rule 9(b) Pleading Standards. ....................... 5

     C.     Plaintiffs' Allegations Amount, at Best, to Breach of Contract—Not Fraud. ....................................................................................................... 7

     D.     ACA Violations Are Not RICO Predicate Acts. .................................... 10

II.     Plaintiffs Fail To State a Claim for Unjust Enrichment. .................................. 11

III.    Plaintiffs Lack Standing To Assert Most of Their State Law Claims. ............. 12

IV.    Plaintiffs Fail To State Any State Consumer Protection Law Claim. .............. 14

Conclusion ............................................................................................................. 15

# Table of Authorities

## Cases

*Aprill v. Aquila*, 2022 WL 614984 (N.D. Ill. Mar. 1, 2022) ............................................................10

*Arnold v. Microsoft Corp.*, 2000 WL 36114007 (Ky. Cir. Ct. July 21, 2000),
    *aff'd*, 2001 WL 1835377 (Ky. Ct. App. Nov. 21, 2001) ..............................................................15

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................................8, 9

*Bachman v. Bear, Steans & Co.*, 178 F.3d 930 (7th Cir. 1999) .........................................................1

*Bankcard Am., Inc. v. Elliott*, 1994 WL 494843 (N.D. Ill. Sept. 8, 1994) ......................................9

*Bower v. Jones*, 978 F.2d 1004 (7th Cir. 1992) .................................................................................9

*Brown v. Auto-Owners Ins. Co.*, 2022 WL 2442548 (N.D. Ill. June 1, 2022) ........................13, 14

*Bucklew v. Hawkins, Ash, Baptie & Co.*, 329 F.3d 923 (7th Cir. 2003) .......................................1, 4

*Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732 (7th Cir. 2014) ............................................6

*Carr v. Tillery*, 591 F.3d 909 (7th Cir. 2010) ...................................................................................8

*Connick v. Suzuki Motor Co.*, 675 N.E.2d 584 (Ill. 1996) ..............................................................15

*Cruz v. FXDirectDealer, LLC (FXDD)*, 720 F.3d 115 (2d Cir. 2013) ............................................3

*De Bouse v. Bayer*, 922 N.E.2d 309 (Ill. 2009) ..............................................................................14

*Emery v. Am. Gen. Fin., Inc.*, 134 F.3d 1321 (7th Cir. 1998) ...........................................................2

*Exportação Ltda. v. Case Corp.*, 541 F.3d 719 (7th Cir. 2008) .....................................................12

*Fitzgerald v. Chrysler Corp.*, 116 F.3d 225 (7th Cir. 1997) .........................................................2, 4

*Fogie v. THORN Ams., Inc.*, 190 F.3d 889 (8th Cir. 1999) ...............................................................4

*Hefferman v. Bass*, 467 F.3d 596 (7th Cir. 2006) .........................................................................9, 10

*In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953 (N.D. Cal. 2016) .............................15

*In re Cattle Antitrust Litig.*, 2021 WL 7757881 (D. Minn. Sept. 14, 2021) ..................................15

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 2013 WL 4506000
    (N.D. Ill. Aug. 23, 2013) ..............................................................................................................13

*In re: First Farmers Fin. Litig.*, 2016 WL 5940933 (N.D. Ill. Oct. 13, 2016) ..........................9, 10

*In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61 (D. Mass. 2005) ................15

*Kadamovas v. Stevens*, 706 F.3d 843 (7th Cir. 2013) .........................................................9

*Kempf v. Lumber Liquidators, Inc.*, 2017 WL 4288903 (W.D. Ky. Sept. 27, 2017)....................15

*Mashallah, Inc. v. W. Bend Mut. Ins. Co.*, 20 F.4th 311 (7th Cir. 2021)...............................11, 12

*Mason v. Medline Indus., Inc.*, 731 F. Supp. 2d 730 (N.D. Ill. 2010) ............................................6

*McNeal v. J.P. Morgan Chase Bank, N.A.*, 2016 WL 6804585 (N.D. Ill. Nov. 17, 2016)..........3, 4

*Mills v. Polar Molecular Corp.*, 12 F.3d 1170 (2d Cir. 1993) ........................................................7

*Morrison v. YTB International, Inc.*, 649 F.3d 533 (7th Cir. 2011) ............................................13

*Nat'l Painting, Inc. v. PPG Architectural Finishes, Inc.*, 2015 WL 1593008
     (N.D. Ill. Apr. 1, 2015) ...............................................................................................10

*Pa. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, 2010 WL 1979569
     (N.D. Ill. May 17, 2010) .............................................................................................6

*Perlman v. Zell*, 185 F.3d 850 (7th Cir. 1999)..............................................................................7

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*,
     631 F.3d 436 (7th Cir. 2011) ....................................................................................12

*Polymer Dynamics, Inc. v. Bayer Corp.*, 2000 WL 1146622 (E.D. Pa. Aug. 14, 2000) ................8

*Richmond v. Nationwide Cassel L.P.*, 847 F. Supp. 88 (N.D. Ill. 1994) .........................................1

*Rocha v. FedEx Corp.*, 15 F. Supp. 3d 796 (N.D. Ill. 2014) .........................................................5

*SEC v. Kameli*, 373 F. Supp. 3d 1194 (N.D. Ill. 2019).................................................................6

*State Mech. Servs. LLC v. NES Equip. Servs. Corp.*, 2018 WL 2193248
     (N.D. Ill. May 14, 2018) .............................................................................................12

*United Food & Com. Workers Unions & Emps. Midwest Health Benefits Fund v.*
     *Walgreen Co.*, 2012 WL 3061859 (N.D. Ill. July 26, 2012),
     *aff'd*, 719 F.3d 849 (7th Cir. 2013)...........................................................................10

*United States v. Weimert*, 819 F.3d 351 (7th Cir. 2016)..............................................................8

## Statutes and Other Authority

Fed. R. Civ. P. 8(a)(3)(d) .............................................................................................12

Fed. R. Civ. P. 9(b) ...............................................................................................5, 6, 7, 8, 14

215 Ill. Comp. Stat. 5/131.1 ................................................................................................3

215 Ill. Comp. Stat. 5/131.14(2) ........................................................................................5

1 *McLaughlin on Class Actions* § 4:28 (18th ed.) ........................................................14

**Introduction**

Plaintiffs' RICO cause of action is untenable because Plaintiffs' complaint fails to distinguish the purported RICO enterprise from the allegedly liable "persons," and at most pleads alleged breaches of contract or ACA violations, not the RICO predicate acts of mail- and wire-fraud. Plaintiffs attempt to muddy these issues in their Opposition, but they fail to overcome the multiple reasons mandating dismissal. At bottom, Plaintiffs allege that Defendants' health care provider directories are out of date, but Plaintiffs allege no actual fraud with particularity, dooming their RICO and consumer-fraud claims. Plaintiffs' unjust enrichment claim also fails, because of the existence of express contracts. And Plaintiffs have no standing to represent consumers under the laws of states in which they do not reside and were not injured.

**I.      Plaintiffs Fail To State a Civil RICO Cause of Action.**

**A.      Plaintiffs Cannot Meet the "Distinctiveness" Test.**

The complaint is premised on the fundamentally flawed idea that Centene Corp., a public company, and its wholly owned subsidiaries are somehow distinct such that they can constitute a RICO enterprise. This theory defies decades-long Seventh Circuit precedent holding that, as a general rule, "[a] firm and its employees, or a parent and its subsidiaries, are not an enterprise separate from the firm itself." *Bachman v. Bear, Stearns & Co.*, 178 F.3d 930, 932 (7th Cir. 1999). "[A]llowing Plaintiffs to generate such 'contrived partnerships' consisting of an umbrella organization and its subsidiary parts, would render the non-identity requirement of section 1962(c) meaningless." *Richmond v. Nationwide Cassel L.P.*, 847 F. Supp. 88, 92 (N.D. Ill. 1994) (citation omitted).

Plaintiffs argue that the so-called "Ambetter Enterprise" fits into the narrow exception that applies when a company's "decision to operate through subsidiaries rather than divisions somehow facilitated its unlawful activity." *Bucklew v. Hawkins, Ash, Baptie & Co.*, 329 F.3d 923, 934 (7th

1

Cir. 2003). But Plaintiffs' Opposition only highlights that the complaint contains no well-pled facts showing that Centene used its subsidiaries as the "instrument of [its] criminality." *See Emery v. Am. Gen. Fin., Inc.*, 134 F.3d 1321, 1324 (7th Cir. 1998); *see also* Opp'n at 4–5 (describing purely legal activity of subsidiaries, including holding ACA insurance licenses).

The Court need look no further than the Seventh Circuit's decision in *Fitzgerald v. Chrysler Corp.*, 116 F.3d 225 (7th Cir. 1997), which Defendants cited in their opening brief and Plaintiffs ignore. In that case, the alleged RICO enterprise was the Chrysler Corporation and various of its related entities and subsidiaries. *Id.* at 226. In rejecting the alleged RICO enterprise, the court cautioned that a "literal[]" reading of the RICO statute "would encompass every fraud case against a corporation, provided only that a pattern of fraud and some use of the mails or . . . telecommunications to further the fraud were shown; the corporation would be the RICO person and the corporation plus its employees the 'enterprise.'" *Id.* Consistent with this principle, the court in *Fitzgerald* held that

> where a large, reputable manufacturer deals with its dealers and . . . agents in the ordinary way, so that their role in the manufacturer's illegal acts is entirely incidental, differing not at all from what it would be if these agents were the employees of a totally integrated enterprise, the manufacturer plus its dealers and other agents (or any subset of the members of the corporate family) do not constitute an enterprise within the meaning of the statute.

*Id.* at 228. Here, as in *Fitzgerald*, nothing in the complaint shows that Centene deals with its subsidiaries in anything other than "the ordinary way." *See id.*

Plaintiffs make much of Centene's acquisition of companies with state licenses that are otherwise difficult to obtain. Opp'n at 4. But the complaint contains no well-pled facts showing that Centene acquired these companies "in order to fool [customers] into thinking that they are not dealing with the 'racketeer' [Centene], or to enable [Centene] to engage in fraud on a scale that would be impossible if it internalized the [licensing] function." *See Fitzgerald*, 116 F.3d at 228.

2

That Centene chose to use state-specific subsidiaries—which themselves are highly regulated—to offer ACA plans and to expand its reach to customers in additional states by acquiring companies with licenses is neither out of the ordinary nor unlawful. *See Cruz v. FXDirectDealer, LLC (FXDD)*, 720 F.3d 115, 121 (2d Cir. 2013) ("[C]orporations that are legally separate but 'operate within a unified corporate structure' and 'guided by a single corporate consciousness' cannot be both the 'enterprise' and the 'person' under § 1962(c)." (citation omitted)). Indeed, offering insurance through subsidiary companies is so commonplace that there is a model Insurance Holding Company Systems Act that has been adopted in at least 47 states, including Illinois. *See* 215 Ill. Comp. Stat. 5/131.1.

Plaintiffs' attempt to distinguish *McNeal v. J.P. Morgan Chase Bank, N.A.*, 2016 WL 6804585 (N.D. Ill. Nov. 17, 2016), which rejected a similar RICO cause of action, is unconvincing. In *McNeal*, the plaintiffs' allegations "[a]t best" were that "affiliates within the JPMorgan Chase corporate family unlawfully carried out their mortgage-related businesses." *Id.* *4. That alone meant that the plaintiffs failed to allege a RICO claim. *Id.* So too here: Plaintiffs' allegations "[a]t best" suggest that Centene's affiliates "unlawfully carried out" Centene's ACA health-insurance business. *See id.* The court in *McNeal* noted that the complaint was deficient for the ***additional*** reason that the plaintiffs in that case failed to allege sufficient facts regarding the alleged enterprise's "structure, duration, or organization." *Id.* Thus, Plaintiffs' argument that *McNeal* is distinguishable because the complaint here purportedly "specifies" the "structure, duration, or organization" of the "Ambetter Enterprise," Opp'n at 12, says nothing about whether the distinctness requirement has been pleaded.

Nor do the cases on which Plaintiffs rely help them meet the distinctness requirement. In *In re ClassicStar Mare Lease Litigation*, the parent company (GeoStar) was an oil-and-gas

3

company that acquired a horse-breeding business (ClassicStar) that was defrauding investors seeking a tax shelter, as a way to raise money for its oil-and-gas business. 727 F.3d 473, 479 (6th Cir. 2013).[1] The horse business was engaged in obvious fraud—including by selling interests in non-existent horses—and several persons pleaded guilty to criminal tax fraud. *Id*. at 485. The tax shelter investors in ClassicStar were induced to invest in GeoStar's separate oil-and-gas business. *Id.* at 479–80. The Sixth Circuit noted that the "separate corporate existence and purported independence" of the various entities, including an ***unaffiliated*** entity (NELC), were "key aspects of the fraud," used to "convince investors that ClassicStar's financing scheme was legitimate." *Id.* at 494. And on top of that, the court noted that the parent and subs were involved in completely unrelated businesses, including horse breeding and oil and gas mining. *Id.* at 493. Those facts are a far cry from those here. The facts here most closely resemble those in *Fitzgerald* and *McNeal*, where related entities were all engaged in the ***same*** business and where no allegations supported the notion that "the parent corporation use[d] the separately incorporated nature of its subsidiaries to perpetrate a fraudulent scheme." *Id.* at 493 (citing *Bucklew*).

In *National Council on Compensation Insurance, Inc.*, the complaint alleged that the defendants "made a conscious decision to abuse AIG corporate subsidiary forms in order to widely disperse the wrongful and unlawful conduct, make the fraudulent scheme harder to detect and

---

[1] Plaintiffs are wrong to suggest that *ClassicStar* can be read to mean that the distinctness requirement is met merely because corporate parents and subsidiaries play "distinct roles" in business. Opp'n at 10. Such a reading would be out of step with Seventh Circuit law, which *ClassicStar* itself cites. *See Bucklew v. Hawkins, Ash, Baptie & Co.*, 329 F.3d 923, 934 (7th Cir. 2003) (rejecting enterprise allegation where plaintiff alleged that "the parent stole the software and gave it to the subsidiary to market"); *Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 226 (7th Cir. 1997) (rejecting enterprise consisting of Chrysler and "subsidiaries of the Chrysler Corporation engaged in various facets of production, financing, and marketing"). Such a loose test would effectively "read the distinctiveness requirement out of RICO" because the playing of different roles is "typical of every parent-subsidiary relationship." *Fogie v. THORN Ams., Inc*., 190 F.3d 889, 898 (8th Cir. 1999).

better conceal the nature and extent of the lies and wrongdoing." 2007 WL 7715086, at *3 (N.D. Ill. Dec. 26, 2007) (cleaned up). There are no allegations here that Centene's use of subsidiaries concealed anything or made the alleged conduct harder to detect. *See id.* To the contrary, Plaintiffs' own allegations make clear that Centene routinely discloses the relationships between it and its subsidiaries. *See, e.g.*, Compl. ¶ 117 (citing Centene public statement acknowledging that "Centene Corp.'s subsidiaries have contracts to operate Medicaid managed-care plans in at least 30 states"). The highly regulated nature of the industry makes any such concealment implausible. *See, e.g.*, 215 Ill. Comp. Stat. 5/131.14(2) (requiring holding companies to file registration statements including "the identity and relationship of every member of the insurance holding company system").

"Plaintiffs are 'trying to fit a square peg in a round hole by squeezing garden-variety business disputes into civil RICO actions.'" *Rocha v. FedEx Corp.*, 15 F. Supp. 3d 796, 807 (N.D. Ill. 2014) (internal quotation marks omitted) (dismissing RICO claim where "Defendants [were] all members of the same 'corporate family'"). Because Plaintiffs fail to plead an enterprise that is distinct from Defendants, Plaintiffs' RICO cause of action must be dismissed.

### B.    Plaintiffs' Complaint Fails Rule 9(b) Pleading Standards.

Plaintiffs do nothing to rebut the argument that their fraud-based claims fail because they do not plead with specificity that they saw certain providers in a directory before purchasing their insurance. Opp'n at 7; *see also* Mot. to Dismiss at 10–12; Compl. ¶¶ 12, 31–32, 44–45, 78–80, 138–39. Instead, Plaintiffs pivot to a related assertion: "Defendants . . . defraud consumers by, among other things, falsely representing through advertising materials that their lists of network providers are current." Opp'n at 7. But that allegation likewise fails Rule 9(b).

Plaintiffs point to the promise of "[a] current list of network providers" made in the Evidence of Coverage and claim that the following allegations support their alternative fraud

theory: "[a]t least 50% of the providers on Ambetter's in-network list [contacted by Plaintiff Havrilla] did not accept Ambetter insurance," Compl. ¶ 39; Ambetter insurance was accepted by none of the "29 providers [called by Plaintiff DeSchepper] that were on Ambetter's in-network provider list or were recommended by Ambetter's assistance line," *id.* ¶ 72; and a physical therapist and an orthopedic surgeon in Nevada who "ha[d] not been in-network since 2017" were still on Ambetter's list of in-network providers years later, *id.* ¶¶ 76–81. But these allegations neglect to specify the "who, what, when, where, and how" of the alleged current-list fraud. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) (citation omitted).

Notably, Plaintiffs do not allege that they reviewed the Evidence of Coverage before purchasing insurance. Thus, the complaint contains no "representative examples" of a consumer being fraudulently induced into purchasing Ambetter insurance because of the promise of "[a] current list of network providers." *See Mason v. Medline Indus., Inc*., 731 F. Supp. 2d 730, 735 (N.D. Ill. 2010). Setting aside that glaring deficiency, Plaintiffs do not disclose the names of the allegedly out-of-network providers. Nor do Plaintiffs disclose the providers they allegedly contacted, when they contacted those providers, and what was said. Plaintiffs thus fail to give the fair notice Rule 9(b) requires by providing no means for Defendants to test Plaintiffs' allegations. *See SEC v. Kameli*, 373 F. Supp. 3d 1194, 1202 (N.D. Ill. 2019).

The complaint also improperly lumps together Defendants. Plaintiffs contend that this argument rests on "misunderstandings of the elements of mail and wire fraud." Opp'n at 8. Not so. Defendants have not argued that use of the mail or wires needs to be an indispensable part of the fraud or that each Defendant must have personally caused the use of the mail or wires. *Contra* Opp'n at 8–9. Rather, Defendants' argument is that Plaintiffs have not adequately alleged "two predicate acts of racketeering . . . by each defendant." *Pa. Chiropractic Ass'n v. Blue Cross Blue*

*Shield Ass'n*, 2010 WL 1979569, at *9, *11 (N.D. Ill. May 17, 2010) (dismissing RICO claim because plaintiffs "ha[d] not adequately alleged two predicate acts of racketeering activity by each of the[] defendants" and instead had argued "that the defendants worked together to advance [a] recoupment scheme and that [defendants] were thus 'inextricably intertwined' with each other" (citation omitted)).

Throughout the complaint, Plaintiffs refer to a scheme to defraud that Defendants collectively perpetrated. *See, e.g.*, Compl. ¶¶ 142–151, 199–201. Plaintiffs tersely allege that "Defendants Centene Corp. and Centene Management designed the Ambetter plan and originated the scheme to defraud," and that "Centene Management coordinates between the various Centene Corp. subsidiaries . . . to ensure that all of the members of the Enterprise work toward a common purpose." *Id.* ¶ 207. But those conclusory allegations merely restate one element of mail and wire fraud and fall short of demonstrating with particularity the "who, what, when, where, and how of the fraud" with respect to each individual Defendant. *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'" (citation omitted)).

### C. Plaintiffs' Allegations Amount, at Best, to Breach of Contract—Not Fraud.

"The bottom line," Plaintiffs allege, is that Defendants "don't deliver what they promise" in highly regulated ACA insurance contracts. *See* Compl. ¶ 15. But "a series of broken promises" does not give rise to a RICO claim. *See Perlman v. Zell*, 185 F.3d 850, 853 (7th Cir. 1999).

Plaintiffs contend that they are "entitled to bring a RICO claim and refrain from raising breach-of-contract claims." Opp'n at 15–16. That is beside the point, because the question is whether Plaintiffs' allegations support a RICO claim. They do not; at most, Plaintiffs' allegations support a claim for breach of contract. Mot. to Dismiss at 14–16. Nor are plaintiffs helped by

citing *Polymer Dynamics, Inc. v. Bayer Corp.,* 2000 WL 1146622 (E.D. Pa. Aug. 14, 2000) for the proposition that RICO and breach of contract "are not mutually exclusive." Opp'n at 15. In that case, unlike here, a viable scheme to defraud was alleged that included the defendant filing a phony replevin claim and orchestrating an elaborate plan to steal plaintiff's proprietary information. *Polymer*, 2000 WL 1146622, at *1–2.

Plaintiffs recite the "pattern requirement" of RICO and note its role in analyzing whether "an action is properly brought under RICO." Opp'n at 15. But the problem here is that Plaintiffs have not alleged any cognizable *criminal* predicate acts necessary to support a RICO claim, rather than a simple breach of contract. There is nothing criminal about breach of contract, *see Carr v. Tillery*, 591 F.3d 909, 918 (7th Cir. 2010) (rejecting RICO claim "renam[ing] breach of contract fraud or crime in an effort to satisfy the requirement of establishing 'predicate acts'"); *United States v. Weimert*, 819 F.3d 351, 357 (7th Cir. 2016) ("The mail and wire fraud statutes 'do not cover all behavior which strays from the ideal.'" (citation omitted)), and Plaintiffs fail to plead with particularity the who, what, when, where, and how of mail or wire fraud*, see supra* Section I.B*;* Mot. to Dismiss 10–12.

Plaintiffs fall short in their attempt to "transmogrif[y]" an alleged breach of contract into fraudulent inducement. *See Carr*, 591 F.3d at 918. Not only are the specifics of the purported scheme to defraud not pleaded with particularity, Plaintiffs fail to adequately allege that Defendants intended to deceive customers. Plaintiffs accuse Defendants of "disregard[ing] Rule 9(b)'s liberal requirements for alleging intent." Opp'n at 13 n.4. Not so, because Defendants have pointed out that Plaintiffs' allegations suggest nothing "more than a sheer possibility that [Defendants] acted" with unlawful intent. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That is not enough.

Although intent may be alleged generally, "'generally' is a relative term." *Id.* at 686. "Rule 9 merely excuses [Plaintiffs] from pleading . . . intent under an elevated pleading standard. It does not give [Plaintiffs] license to evade the less rigid—though still operative—strictures of Rule 8. . . . And Rule 8 does not empower [Plaintiffs] to plead the bare elements of [their cause of action], affix the label 'general allegation,' and expect [their] complaint to survive a motion to dismiss." *Id.* at 686–87. Thus, threadbare allegations that Defendants "intended to deceive consumers into purchasing Ambetter plans" (Compl. ¶¶ 143, 200) are insufficient. Plaintiffs must "point to specific, objective manifestations of fraudulent intent." *Bankcard Am., Inc. v. Elliott*, 1994 WL 494843, at *4 (N.D. Ill. Sept. 8, 1994) (quoting *Bower v. Jones*, 978 F.2d 1004, 1012 (7th Cir. 1992)); *see also Kadamovas v. Stevens*, 706 F.3d 843, 844 (7th Cir. 2013) ("Brevity must be calibrated to the number of claims and also to their character, since some require more explanation than others to establish their plausibility—and the Supreme Court requires that a complaint establish the plausibility of its claims.").

Plaintiffs aver that Defendants' "intent to defraud is evidenced by their conduct." Compl. ¶ 142. But, for reasons stated in Defendants' motion, *see* Mot. to Dismiss at 15–16, none of the allegations that follow permit the Court to draw a "reasonable inference" that Defendants acted with fraudulent intent. *Iqbal*, 556 U.S. at 678. Plaintiffs' response makes no effort to rebut these specific arguments.

Plaintiffs read *In re: First Farmers Fin. Litig.*, 2016 WL 5940933 (N.D. Ill. Oct. 13, 2016), and *Hefferman v. Bass*, 467 F.3d 596 (7th Cir. 2006), to sanction their conclusory pleading of intent. But under Plaintiffs' reasoning, "anyone with a breach of contract claim could open the door to tort damages by alleging that the promises broken were never intended to be performed." *Bower*, 978 F.2d at 1012. This court consistently has required more at the pleading stage to sustain

fraudulent inducement claims. *See, e.g.*, *Aprill v. Aquila*, 2022 WL 614984, at *15 (N.D. Ill. Mar. 1, 2022); *Nat'l Painting, Inc. v. PPG Architectural Finishes, Inc.*, 2015 WL 1593008, at *4 (N.D. Ill. Apr. 1, 2015). Plaintiffs' cases also are distinguishable. *First Farmers* involved the execution of a loan that the debtor never intended to pay because his company was underfunded. 2016 WL 5940933, at *4. The complaint in *Hefferman* alleged that the defendant, an attorney, was intimately involved in a scheme to trick the plaintiff into investing in a car wash before convincing the plaintiff to sign a release relinquishing his interest. 467 F.3d at 598. In contrast to these cases, there are no well-pleaded facts here that provider directories (which Plaintiffs were told were "subject to change" and the accuracy of which is dependent on providers supplying correct and updated information) were intentionally inaccurate or that Defendants never intended to provide "current" directories. This distinction is particularly salient where Plaintiffs failed to plead that they reviewed the Evidence of Coverage, **when** they searched any online directory, or **which** specific providers were allegedly out-of-network when those directories were consulted.

### D.    ACA Violations Are Not RICO Predicate Acts.

Plaintiffs do not contest that alleged ACA violations by themselves cannot support a RICO claim. *See United Food & Com. Workers Unions & Emps. Midwest Health Benefits Fund v. Walgreen Co.*, 2012 WL 3061859, at *3 (N.D. Ill. July 26, 2012), *aff'd*, 719 F.3d 849 (7th Cir. 2013). Instead, Plaintiffs argue that they "need not establish an ACA violation" because they "can prevail . . . if they prove that Defendants engaged in a scheme to defraud." Opp'n at 18. True, but Plaintiffs' mail- and wire-fraud allegations are woefully deficient, as discussed above. *See supra* Sections I.B, C. And the alleged promises that Plaintiffs describe are all based on ACA regulatory requirements, as the complaint makes plain. Compl. ¶¶ 131–33 (citing 45 C.F.R. § 156.230(a)(2) (requiring health plans to maintain a sufficient network to assure access without unreasonable delay); *id*. § 156.230(b)(2) (health plans "must publish an up-to-date, accurate, and complete

provider directory"); *id*. § 156.235(a)(1) (requiring health plans to have sufficient number and distribution of providers for low-income individuals)). These alleged ACA violations cannot support the RICO claim—a proposition Plaintiffs concede. *See* Opp'n at 17.

## II.   Plaintiffs Fail To State a Claim for Unjust Enrichment.

"Plaintiffs acknowledge that their unjust enrichment claim rises or falls with their RICO claim." Opp'n at 19. Thus, for reasons stated above, *see supra* Section I, Plaintiffs unjust enrichment claim must be dismissed.

The claim fails for an independent reason: The doctrine of unjust enrichment has "no application" where "a specific contract . . . governs the relationship of the parties." *Mashallah, Inc. v. W. Bend Mut. Ins. Co.*, 20 F.4th 311, 325 (7th Cir. 2021) (citation omitted). Here, Plaintiffs' complaint is replete with concessions that the insurance contract governs the consumer-insurer relationship. *See, e.g.*, Compl. ¶¶ 22(g) (referencing "the insurance contract"), 139 (referencing "the evidence of coverage, which is the contract between the consumer and the insurer"), 140 (alleging that the evidence of coverage for the 2020 Illinois Ambetter plan is materially identical to those in the other 26 states where Ambetter plans are offered). And Plaintiffs point to no benefit conferred on Defendants other than the payment of premiums for the insurance coverage provided. *See* Mot. to Dismiss Ex. A at 1, 33. These facts mandate dismissal of the unjust enrichment claim.

In an effort to evade dismissal, Plaintiffs strangely suggest that ***maybe*** no contract governs the relationship between the parties. Opp'n at 18. But that cannot be correct, because Plaintiffs received benefits under their insurance contracts. Recognizing that the existence of the contract dooms their unjust enrichment claim, Plaintiffs, while citing no facts, assert that the validity of the contracts at issue "cannot be determined at the pleadings stage." Opp'n at 18–19. Yet nowhere in the complaint do Plaintiffs challenge the validity of the governing contracts, the terms of which Plaintiffs themselves invoke. "The remedy for fraud in the inducement is to rescind the contract,"

*Extra Equipamentos e Exportação Ltda. v. Case Corp.*, 541 F.3d 719, 726 (7th Cir. 2008), but the complaint does not seek rescission, and Plaintiffs cannot amend their pleading in their brief, *see Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011).

Plaintiffs note that Federal Rule of Civil Procedure 8(a)(3)(d) permits pleading in the alternative such that claims for unjust enrichment and breach of contract can coexist. Opp'n at 19. But such alternative pleading is "limited" and only permissible where plaintiffs do not "include allegations of an express contract." *Mashallah*, 20 F.4th at 325 (citation omitted). Plaintiffs, however, do just that, while omitting any challenge to the validity of the contracts. *See, e.g.*, Compl. ¶¶ 22, 139, 140. Plaintiffs' alternative pleading argument thus is a red herring.

Plaintiffs' also miss the mark with their contention that they have viable unjust enrichment claims against Defendants with whom they did not contract. Opp'n at 18. A plaintiff cannot evade the rule barring unjust enrichment claims where an express contract exists simply by suing the parent company of the contracting defendant. *See State Mech. Servs. LLC v. NES Equip. Servs. Corp.*, 2018 WL 2193248, at *5 (N.D. Ill. May 14, 2018) (dismissing unjust enrichment claim against parent where plaintiff was in privity with subsidiary and no veil-piercing allegations). Nor do Plaintiffs plead that any non-contracting Defendant received and retained any benefit.

## III.     Plaintiffs Lack Standing To Assert Most of Their State Law Claims.

No named Plaintiff is a citizen of or alleges that they received services in California, Kentucky, Nebraska, New Jersey, New Mexico, North Carolina, Pennsylvania, or Washington.

Plaintiffs thus suffered no injury in these states and accordingly lack standing to assert claims under the laws of these states.[2]

Plaintiffs observe that several district courts[3] have deferred standing issues to the class certification stage and cite reasoning from *Morrison v. YTB International, Inc.*, 649 F.3d 533 (7th Cir. 2011), to support their position. *Morrison* is distinguishable because in that case, unlike here, plaintiffs brought suit under a ***single Illinois statute*** on behalf of a nationwide class. In the instant case, however, Plaintiffs assert claims under ***multiple state statutes*** where ***no*** plaintiff resides. *See Brown v. Auto-Owners Ins. Co.*, 2022 WL 2442548, at *3 (N.D. Ill. June 1, 2022) (putative multi-state insurance coverage class action brought by Illinois homeowners; distinguishing *Morrison* because it has no applicability "to issue of named plaintiff's standing to bring out-of-state claims"). "Standing is not dispensed in gross, and a named plaintiff in a class action 'who has been subject to injurious conduct of one kind' does not 'possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject.'" *Id.* (quoting *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996)).

This Court should follow the reasoning in cases like *Brown* because "Plaintiffs cannot possess the same interest or suffer the same injury shared by all members of the class they wish to represent where Plaintiffs have no connection to" other states, and therefore they "lack standing to assert claims under those laws." *Id.* at *2; *see also In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 2013 WL 4506000, at *8 (N.D. Ill. Aug. 23, 2013) (dismissing claims based on

---

[2]  Relatedly, with no named plaintiffs from these states, Defendants lack the ability to test the sufficiency of any plaintiff's claim under the laws of those states.

[3]  Plaintiffs assert that the "vast majority of judges in this district who have considered this question" since 2015 have reserved judgment for the class-certification stage. Opp'n at 20. But "[c]ourts in this district ***routinely*** dismiss or strike class claims where named plaintiffs seek to represent proposed class members from other states." *Brown v. Auto-Owners Ins. Co.*, 2022 WL 2442548, at *2 (N.D. Ill. June 1, 2022) (emphasis added) (citing cases).

the laws of states the named plaintiffs did not reside in); 1 *McLaughlin on Class Actions* § 4:28 (18th ed.) (the named plaintiffs in a putative class action "lack standing to assert claims under the laws of states in which they do not reside or in which they suffered no injury").

Plaintiffs argue that dismissing those claims for which they lack standing would not narrow discovery. First, Plaintiffs have no answer to the fundamental point that "[p]ostponing the threshold standing question until after discovery would accomplish nothing" because "[d]iscovery cannot fix the fact that Plaintiffs[ ] have no injury under" the laws of states where they do not reside. *Brown*, 2022 WL 2442548, at *3. Second, Plaintiffs concede that "some" discovery would be "state-specific." Opp'n at 22. And while Plaintiffs' RICO claim may "cover all states in which the Ambetter plans are sold," *id.*, the RICO and state law claims are not identical; each would require proof of unique elements. So in addition to "accomplish[ing] nothing," discovery would not be so overlapping as Plaintiffs suggest. *See Brown*, 2022 WL 2442548, at *3 ("[I]t would be inappropriate to engage in wide-ranging discovery premised on a prospect as to which there is substantial doubt—namely, Plaintiffs' ability to assert causes of action created by other states for the benefit of other individuals injured in those other states.").

## IV.    Plaintiffs Fail To State Any State Consumer Protection Law Claim.

For the reasons discussed above and in Defendants' opening brief, Plaintiffs' vague state-law claims fail for the same reasons that their RICO claim fails under Rule 9(b). Their state consumer protection claims also suffer from independent deficiencies that require dismissal.

First, while Plaintiffs say that "reliance is not an element of all of the state consumer-protection claims" (Opp'n at 22), they do not dispute that for any ***misrepresentation-based*** claim under any of these laws, they must plead that they saw or heard the allegedly false statement. Plaintiffs do not do so here. And Plaintiffs simply are wrong that reliance is not an element of a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act. *See De Bouse v.*

*Bayer*, 922 N.E.2d 309, 316 (Ill. 2009) (distinguishing *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584 (Ill. 1996), cited by Plaintiffs, and concluding that "[i]f a consumer has neither seen nor heard any . . . statement, then she cannot have relied on the statement and, consequently, cannot prove proximate cause"). Because Plaintiffs do not adequately plead that they saw or heard Defendants' allegedly fraudulent misrepresentations, *see* Mot. to Dismiss 22–23, Plaintiffs' consumer protection claims fail for that reason alone.

Second, for the reasons explained above and in Defendants' opening brief, *see supra* Section I.C.; Mot. to Dismiss 13–16, Plaintiffs fail to explain how their allegations amount to anything other than garden-variety breach of contract. Nor do Plaintiffs contest that an alleged breach of contract will not support a claim under the consumer protection statutes of Illinois, Kentucky, Nebraska, New Jersey, New Mexico, North Carolina, and Pennsylvania. Plaintiffs therefore fail to state a claim under the laws of those states.[4]

### Conclusion

For the foregoing reasons, and for the reasons set forth in Defendants' opening brief, the complaint should be dismissed.

---

[4] The Kentucky and Nebraska consumer-protection claims are subject to dismissal for additional reasons. Class actions are not available under Kentucky's consumer-protection statute. *In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 84 (D. Mass. 2005) (citing *Arnold v. Microsoft Corp.*, 2000 WL 36114007, at *6 (Ky. Cir. Ct. July 21, 2000), *aff'd*, 2001 WL 1835377 (Ky. Ct. App. Nov. 21, 2001), and explaining that "there is no right to bring a class action to enforce [Kentucky's] consumer protection statutes"). While *Kempf v. Lumber Liquidators, Inc.*, 2017 WL 4288903, at *4 (W.D. Ky. Sept. 27, 2017), questioned *Arnold*, other federal courts have deemed *Arnold* persuasive and followed its reasoning. *See, e.g.*, *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 999–1001 (N.D. Cal. 2016). Nebraska's consumer-protection statute "expressly exempts certain activities of heavily regulated businesses," which "applies to all conduct regulated by federal agencies." *In re Cattle Antitrust Litig.*, 2021 WL 7757881, at *13 (D. Minn. Sept. 14, 2021) (citation omitted). The complaint alleges that the conduct about which Plaintiffs complain is regulated by the ***federal*** Department of Health and Human Services, not a state agency. *See, e.g.*, Compl. ¶ 132. Thus, the carve out Plaintiffs point to in section 59-1617(2) is inapplicable. *See* Opp'n at 24.

Dated:  December 2, 2022

Respectfully submitted,

Williams & Connolly LLP

By:  _/s/ Steven M. Cady_

George A. Borden
Steven M. Cady
Andrew L. Hoffman (*pro hac vice*
application forthcoming)
680 Maine Avenue SW
Washington, DC 20024
(202) 434-5321
scady@wc.com

*Counsel for Defendants*

**Certificate of Service**

I hereby certify that on this 2nd day of December, 2022, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will serve this document on all counsel of record via transmission of Notices of Electronic Filing.

_/s/ Steven M. Cady_