IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MATTHEW HAVRILLA, CYNTHIA DAWSON, ALDEN HENRIKSEN, MELODY DESCHEPPER, CHRISTOPHER TILTON, and MARK HACKETT, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>*v.*<br><br>CENTENE CORPORATION, CENTENE MANAGEMENT COMPANY LLC, and CELTIC INSURANCE COMPANY,<br><br>        Defendants. | Case No. 22 C 4126<br><br>Judge Nancy L. Maldonado<br><br>Magistrate Judge M. David Weisman |

## PLAINTIFFS' MOTION TO COMPEL

Plaintiffs respectfully move under Federal Rule of Civil Procedure 37 for the Court to compel Defendants Centene Corporation, Centene Management Company LLC, and Celtic Insurance Company to: (1) produce the names and job titles of the persons for whom Defendants have preserved ESI; (2) produce responsive documents from Plaintiffs' proposed custodians; (3) provide information regarding the non-custodial documents produced thus far; and (4) produce discovery from the time period relevant to this action, which is October 1, 2013 to the present.

### I. Summary and Statement Under Local Rule 37.2

The parties have reached an impasse regarding discovery. Despite conferring several times since discovery began in November 2022, the parties have been unable to make progress on the most basic of topics: (1) the identification of custodians who may have documents and data responsive to Plaintiffs' discovery requests; (2) the sources, locations,

and authors of the non-custodial documents Defendants have produced to date; and (3) the relevant time frame for discovery.

Plaintiffs are requesting foundational discovery that will enable them to determine which of Defendants' employees have information relevant to this case. The information sought by Plaintiffs should have been produced months ago and imposes little to no burden on Defendants.

This discovery gridlock is the result of Defendants having continually failed to meet their fundamental discovery obligations, despite the requests and diligent efforts of Plaintiffs' counsel. The good-faith efforts of Plaintiffs' counsel are demonstrated by the parties' written correspondence, as well as by telephonic meetings on January 16, February 16, and February 24, 2023, in accordance with Federal Rule of Civil Procedure 37. At those telephonic meetings, Plaintiffs were represented by Jennifer Murray of Terrell Marshall Law Group and Zoran Tasić of Wexler Boley & Elgersma LLP, and Defendants were represented by Steve Cady of Williams & Connolly LLP.

## II.  Background

In October 2022, the Court adopted in part the parties' jointly proposed schedule, thereby providing that discovery would commence on November 18, 2022. Dkt. No. 21, Minute Entry of Oct. 27, 2022.

On November 18, 2022, Plaintiffs served on Defendants their initial disclosures and first set of document requests. The same day, Plaintiffs also provided to Defendants a list of proposed Plaintiff-side custodians and search terms. Custodians are simply persons who are likely to possess relevant documents, information, or other materials. Documents in those person's possession are "custodial documents," whereas "noncustodial documents" are those

– 2 –

that are not associated with an individual custodian. Noncustodial documents may be stored in various structured systems, including (among others) databases, collaboration tools, public folders, discussion databases, or shared network folders.

Although not ordered by the Court, an exchange of custodians and search terms on November 18 had been agreed to in the parties' jointly proposed case schedule. Dkt. No. 17-1. The exchange also had been suggested by this Court in order to promote efficiency. Dkt. No. 21, Minute Entry of Oct. 27, 2022.

Defendants did not propose any custodians or search terms on November 18 but did serve their initial disclosures. Defendants' disclosures were deficient in several respects. Among other things, Defendants did not provide the name of a single individual likely to have discoverable information that Defendants may use to support their claims or defenses, as required by Rule 26. Fed. R. Civ. P. 26(a)(1)(A)(i) (providing that "party must, without awaiting a discovery request, provide to the other parties . . . the name and, if known, the address and telephone number of each individual likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses"). Instead, Defendants' disclosures unhelpfully stated that persons likely to have discoverable information were "Defendants' employees who worked on the topics raised by plaintiffs." Ex. 1, Defs.' Initial Disclosures, at 3.

A month later, Defendants responded to Plaintiffs' first set of document requests. Ex. 2, Defs.' Resps. and Objs. to Pls.' First Set of Reqs. for Prod. of Docs. Like Defendants' initial disclosures, their objections were deficient, consisting almost entirely of general boilerplate objections that do not comply with Federal Rules of Civil Procedure 34(b)(2)(B).

*See* Ex. 3, Letter from Z. Tasić to S. Cady (Jan. 4, 2023) (explaining why Defendants' "objections to the RFPs are improper and ineffectual").

The parties held a telephonic meeting on January 16, 2023 to discuss Plaintiffs' first set of document requests, the relevant time period, Defendants' deficient initial disclosures, Defendants' failure to propose custodians or search terms, and Defendants' document productions. Defendants had by this time produced approximately 14,000 non-custodial documents, the majority of which are plan documents that are publicly available on Defendants' websites. None of the electronically stored documents produced has the metadata and coding fields required by the Court's Agreed Order Regarding Production of Electronically Stored Information and Paper Documents ("Order Regarding Production"), Dkt. No. 37 at 17–19, Appendix 1.

One of the issues discussed during the January 16 meet and confer was Defendants' failure to identify—either through initial disclosures or by proposing custodians—persons who may have knowledge or documents relevant to the case. Defendants stated that they would get back to Plaintiffs on that issue by the end of the week.

On January 20, Defendants provided the "first supplement" to their initial disclosures. In the document, Defendants identified by name six persons who were likely to have discoverable information. Ex. 4, Defs.' Initial Disclosures First Suppl., at 3. Like the initial disclosures, Defendants' supplemental disclosures were deficient in a number of ways. Among other things, Defendants provided the same unhelpfully generic description of the subjects of which the listed individuals had knowledge: "Allegations in the Complaint, including regarding provider networks and provider directories, and Plaintiffs' individual

experiences receiving health care." *Id.* Defendants still did not propose any Defendant-side custodians or search terms.

Plaintiffs attempted to move discovery forward by submitting to Defendants both (1) a list of proposed Defendant-side custodians and (2) a list of proposed search terms to run on those custodians' electronically stored information. Because of Defendants' failure to participate in the discovery process, Plaintiffs had to rely primarily on LinkedIn to identify potential custodians. On February 3, Plaintiffs sent their custodian and search-term proposals to Defendants, along with a letter again documenting Defendants' failure to participate in discovery and to comply with the Rules and Court orders governing discovery. *See* Ex. 5, Letter from J. Murray to S. Cady (Feb. 3, 2023); Ex. 6, Pls.' Proposed Custodians; Ex. 7, Pls.' Proposed Search Terms.

The parties next held a telephonic meeting on February 16. At this meeting, Plaintiffs' counsel pressed Defendants on several issues. Plaintiffs' counsel asked for a description of the ESI that was being preserved by Defendants. Defendants were unable to answer the question, even though the exchange of such information is required by this Court's Order Regarding Production. Dkt. No. 37, Order Regarding Prod., at 1 ("The parties will confer regarding a list of the types of ESI they believe should be preserved, including a description of systems, if any, that contain ESI not associated with individual custodians; and names of the custodians, and general job titles or descriptions of custodians, for whom they believe ESI should be preserved.").

When asked why they had not proposed any custodians or search terms, Defendants stated that the six persons identified in the supplement to Defendants' initial disclosures *were* the proposed custodians and that they did not want to discuss search terms before agreeing

– 5 –

on custodians. When asked to provide the job titles and descriptions for the six persons listed in the supplemental disclosures, Defendants stated that they did not know their titles but identified them as the "heads" of Ambetter networks in Texas, Ohio, Washington, Florida, and nationally. Defendants likewise could not identify which company employed any of the six persons listed in the supplemental disclosures. Despite being unable to provide the most basic information about these six individuals, Defendants represented that they were "probably the best" choices for custodians.

The only other reason Defendants offered for proposing the six custodians is that it cost a few thousand dollars to "pull" the documents for each custodian, and Defendants had already pulled these custodians' documents in other litigation. According to Defendants, keeping the number of custodians low was warranted in order to save Defendants money.

Plaintiffs' counsel reminded Defendants that this action was a multi-billion-dollar RICO case involving Ambetter plans sold to millions of people across 26 states. Plaintiffs' counsel told Defendants that, given the amount in controversy, Defendants' access to the relevant information, and Defendants' resources, six custodians was insufficient. Plaintiffs' counsel informed Defendants that if they could not propose more than six custodians by February 22, 2023, the parties would be at an impasse and Plaintiffs would involve the Court.

On February 22, Defendants sent a letter to Plaintiffs once again proposing as custodians only the six persons named in Defendants' supplemental disclosures. Ex. 8, Letter from S. Cady to J. Murray and Z. Tasić (Feb. 22, 2023).

The parties spoke on the telephone again two days later, on February 24. On this call, Plaintiffs' counsel stated that it was now three months into discovery and that no progress had been made due to the lack of effort by Defendants. Plaintiffs informed Defendants that they

would move to compel unless Defendants by the following week: (1) produced the names and job titles of the persons for whom Defendants have preserved ESI; (2) agreed to Plaintiffs' proposed custodians; (3) provided information regarding the provenance of the non-custodial documents produced thus far; and (4) agreed that, for purposes of discovery, the relevant period is October 1, 2013 to the present. On the same day, Plaintiffs sent a formal letter memorializing their request, along with a list of 37 proposed custodians. Ex. 9, Letter from Z. Tasić to S. Cady (Feb. 24, 2023); Ex. 10, Pls.' Proposed Custodians (Feb. 24, 2023).

Defendants declined to meet a single one of Plaintiffs' requests, thus prompting the instant motion to compel.

## III. Argument

Defendants' refusals to provide the documents and information requested by Plaintiffs violate both the Court's Order Regarding Production and Rule 26(b).

As an initial matter, the Court's Order Regarding Production requires Defendants to provide to Plaintiffs (1) the names and job titles of the persons for whom Defendants have preserved ESI and (2) information regarding the provenance of non-custodial documents that are produced:

> The parties will confer regarding a list of the types of ESI they believe should be preserved, **including a description of systems, if any, that contain ESI not associated with individual custodians**; and names of the **custodians, and general job titles or descriptions of custodians, for whom they believe ESI should be preserved**.

Dkt. No. 37, Order Regarding Production, at 1 (emphasis added).

By refusing to provide this information, Defendants are obstructing discovery. As it stands, Plaintiffs have no way to determine the persons who can properly testify about the produced non-custodial documents to authenticate them or explain their contents.

Defendants' refusal to provide this basic information also violates the Court's Order Regarding Production. That alone warrants this Court's compelling Defendants to produce the requested information.

As for Plaintiffs' proposed custodians and relevant period for discovery, Federal Rule of Civil Procedure 26(b)(1) provides that a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." To determine whether discovery is proportional to the needs of the case, the Court should consider:

1. "the importance of the issues at stake in the action,"

2. "the amount in controversy,"

3. "the parties' relative access to relevant information,"

4. "the parties' resources,"

5. "the importance of the discovery in resolving the issues," and

6. "whether the burden or expense of the proposed discovery outweighs its likely benefit."

Fed. R. Civ. P. 26(b)(1).

Here, every one of these factors cuts in favor of granting the instant motion.

**Issues at stake.** In brief, what's at issue in this case is whether Defendants engaged in a decade-long scheme to defraud millions of consumers of billions of dollars by selling them health-insurance plans with sham provider directories. This issue is of monumental importance not only because of the monetary damages due Class Members but also because Defendants' fraud deprived many Class Members of necessary health care.

**Amount in controversy.** The amount in controversy is substantial. There are currently two similar cases pending in federal courts in Ohio and Texas, and the plaintiffs'

expert reports in those cases calculated total premium overcharges for Ambetter beneficiaries in those states to be $40.7 million in Ohio and $1.2 billion in Texas.[1] Given that this class action covers 26 states—and that the RICO statute provides for treble damages—the amount in controversy almost certainly exceeds $10 billion.

**Access to information.** Defendants have exclusive control over the information and documents requested by Plaintiffs.

**Parties' resources.** Defendants have enormous resources at their disposal. As stated in Plaintiffs' Complaint, Defendant Centene Corp. "is a giant in the health-insurance industry. The company's total revenue in 2021 was $126 billion, and it reported $850 million in profits for the first quarter of 2022. As of July 2022, the company's market cap is $52.43 billion." Dkt. No. 1, Class Action Compl., at ¶ 2. Defendant Centene Corp. is the fifth largest health-insurance company in the United States by market share.[2] Since the filing of Plaintiffs' Complaint, Centene has reported a profit of $1.2 billion for 2022, with full-year revenue of $144.5 billion.[3] There is no doubt that Defendants have more than enough resources to produce the relevant information and documents requested by Plaintiffs.

**Importance of the discovery.** Plaintiffs are seeking basic discovery without which effective prosecution of this case is impossible: (1) the names and job titles of the persons for

---

[1] *See* Expert Report of Adam E. Block, Ph.D., *Duff v. Centene Corp.*, No. 1:19-cv-00750-TSB (S.D. Ohio Aug. 15, 2022), ECF No. 39; Expert Report of Simone F. Haeder, PhD, MPA, *Angelo v. Centene Management Co.*, No. 1:20-cv-00484-RP (W.D. Tex. Oct. 21, 2022), ECF No. 62-2.

[2] Chris Kissell, *Largest Health Insurance Companies 2023*, FORBES (updated Jan. 3, 2023), https://www.forbes.com/advisor/health-insurance/largest-health-insurance-companies/.

[3] Paige Minemyer, *Centene CEO says final Medicare Advantage risk adjustment rule leaves 'open questions,'* FIERCE HEALTHCARE (Feb. 7, 2023), https://www.fiercehealthcare.com/payers/centene-posts-213m-loss-even-revenue-grows-q4.

whom Defendants have preserved ESI; (2) custodians for which Defendants will collect, review, and produce relevant documents; (3) information regarding the provenance of the non-custodial documents produced thus far; and (4) that discovery cover the time period of Defendants' fraudulent scheme. Custodial documents such as email often reflect the knowledge or intent of the author or recipient. Thus, custodial documents are essential to proving that Defendants violated RICO because "[f]or a mail and wire fraud RICO violation to exist there must have been intent to defraud." *Bankcard Am., Inc. v. Universal Bancard Sys., Inc.*, 203 F.3d 477, 485 (7th Cir. 2000).

**Burden vs. Benefit.** Plaintiffs are seeking basic discovery that will aid the parties and the Court in "secur[ing] the just, speedy, and inexpensive determination of [this] action." Fed. R. Civ. P. 1. Defendants have offered no evidence of undue burden—only vague assertions that it will cost a few thousand dollars per custodian to "pull" documents.

## IV. Conclusion

The discovery sought by Plaintiffs is reasonable, necessary to resolving the issues in this action, exclusively in Defendants' control, and imposes no undue burden on Defendants.

Accordingly, Plaintiffs respectfully request that this Court grant Plaintiffs' motion to compel and order Defendants to: (1) produce the names and job titles of the persons for whom Defendants have preserved ESI; (2) produce responsive documents from Plaintiffs' proposed custodians; (3) provide information regarding the non-custodial documents produced thus far; and (4) produce discovery from the requested time period.

Dated: March 10, 2023

*/s/ Kenneth A. Wexler*

Kenneth A. Wexler
Justin N. Boley
Zoran Tasić
WEXLER BOLEY & ELGERSMA LLP

– 10 –

311 S. Wacker Drive, Suite 5450
Chicago, IL 60606
Tel: (312) 346-2222
Fax: (312) 346-0022
kaw@wbe-llp.com
jnb@wbe-llp.com
zt@wbe-llp.com

Daniel E. Gustafson
  (*pro hac vice* forthcoming)
Daniel C. Hedlund
  (*pro hac vice*)
Michelle J. Looby
  (*pro hac vice*)
Anthony J. Stauber
  (*pro hac vice*)
GUSTAFSON GLUEK PLLC
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Tel: (612) 333-8844
Fax: (612) 339-6622
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com
tstauber@gustafsongluek.com

Beth E. Terrell
  (*pro hac vice*)
Jennifer Rust Murray
  (*pro hac vice*)
Amanda M. Steiner
  (*pro hac vice*)
TERRELL MARSHALL LAW GROUP
936 North 34th Street, Suite 300
Seattle, Washington 98103
Tel: (206) 816-6603
Fax: (206) 319-5450
bterrell@terrellmarshall.com
jmurray@terrellmarshall.com
asteiner@terrellmarshall.com

Seth R. Lesser
  (*pro hac vice* forthcoming)
Sarah Sears
  (*pro hac vice* forthcoming)
KLAFTER LESSER LLP

Two International Drive, Suite 350
Rye Brook, NY 10573
Telephone: (914) 934-9200
seth@klafterlesser.com
sarah.sears@klafterlesser.com

Adam J. Zapala
   (*pro hac vice*)
COTCHETT, PITRE & MCCARTHY, LLP
840 Malcolm Road
Burlingame, CA 94010
Tel: (650) 697-6000
Fax: (650) 697-0577
azapala@cpmlegal.com

Alexander Barnett
   (*pro hac vice*)
COTCHETT, PITRE & MCCARTHY, LLP
40 Worth Street, Suite 602
New York, NY 10013
Tel: (212) 201-6820
Fax: (917) 398-7753
abarnett@cpmlegal.com

*Attorneys for Plaintiffs and
Proposed Classes*